Argued and submitted December 6, ballot title approved and certified to the
Secretary of State December 30, 1988

JUNE,
*Petitioner,*

*v.*

ROBERTS,
*Respondent.*

(SC S35709)

767 P2d 70

John R. Faust, Jr., Portland, argued the cause for petitioner. With him on the petition was Schwabe, Williamson & Wyatt, Portland.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the answering memorandum were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

By order of the court, Gregory Kafoury, Portland, and Lloyd Marbet, Boring, filed memoranda and argued the cause as intervenors *pro se.* Gregory Kafoury filed a memorandum of additional authority.

Before Peterson, Chief Justice, and Linde, Carson, Jones, Gillette, and Van Hoomissen, Justices.

CARSON, J.

## CARSON, J.

This original proceeding concerns a challenge to a ballot title for a proposed initiative measure.[1]

The Attorney General certified the following ballot title to the Secretary of State:

"PROHIBITS TROJAN OPERATION UNTIL NUCLEAR WASTE, COST, EARTHQUAKE STANDARDS MET

"*Question:* Shall nuclear power plant (Trojan) be allowed to operate only if state regulatory agency finds that certain conditions are met?

"*Explanation:* Enacts new law. Suspends electric power generation at Trojan plant. Provides that no nuclear power plant, specifically Trojan, shall operate in Oregon unless the Energy Facility Siting Council finds, after a hearing, that: (1) a permanent radioactive waste repository has been federally licensed and is accepting waste; (2) the plant is then cost-effective; and (3) the plant can withstand major earthquakes without harm to the public. On legislative declaration of electric power emergency and referral of the question, voters may suspend or repeal this law."

Petitioner seeks a different ballot title, ORS 250.085(2), contending that the ballot title certified by the Attorney General "does not substantially comply with the requirements of ORS 250.035."

Petitioner correctly states the standard of review—this court reviews ballot titles for "substantial compliance" with the requirements of ORS 250.035.[2] ORS

---

[1] The text of the proposed initiative measure is found in the Appendix.

[2] ORS 250.035 provides:

"(1) The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect.

"(2) The ballot title shall not resemble, so far as probably to create confusion, any title previously filed for a measure to be submitted at that election."

This court also reviews ballot titles for substantial compliance with the requirements of ORS 250.039. ORS 250.085(4); *Reed v. Roberts,* 304 Or 649, 652, 748 P2d 542 (1988). Petitioner raises no argument based on ORS 250.039.

250.085(4). *Reed v. Roberts,* 304 Or 649, 652, 748 P2d 542 (1988). ORS 250.035 establishes three requirements for a ballot title:

(1)  A *caption* that reasonably identifies the subject of the measure;

(2)  A *question* that plainly phrases the chief purpose of the measure; and

(3)  A concise and impartial statement *(i.e.,* an *explanation)* that summarizes the measure and its major effect.

Keeping in mind the scope of review and the requirements of ORS 250.035, we turn to petitioner's arguments concerning the Caption, Question, and Explanation of the ballot title certified by the Attorney General.

## CAPTION

As was stated, the Caption must "reasonably [identify] the subject of the measure." ORS 250.035(1)(a). Petitioner argues that the Trojan Nuclear Power Plant (TNPP) *is* the subject of the proposed measure and that the Caption fails to identify the subject because "Trojan" may be understood to refer to a college football team, a "leading condom," or a number of businesses. Petitioner also argues that the measure sets forth "conditions," as opposed to "standards," for continued operation of TNPP and that "conditions" should replace "standards" in the Caption.

Even a cursory review of the proposed measure discloses that TNPP is, in part, the subject. But the findings that must be made to allow TNPP to operate also constitute the subject. Section 2(1) of the measure provides that "[n]o nuclear fueled thermal power plant, including the Trojan Nuclear Power Plant, shall be allowed to operate in Oregon" until findings relating to nuclear waste, cost-effectiveness, and earthquakes are made by the Energy Facility Siting Council (EFSC). The Caption must reasonably identify TNPP and these findings.

This the Caption does. It immediately identifies TNPP with the words "TROJAN OPERATION." If confusion exists about whether "TROJAN OPERATION" refers to operation of a nuclear power plant, a football team, a condom, or a business, the ensuing reference to "NUCLEAR WASTE" eliminates that confusion.

Concerning the use of "STANDARDS," the word may be imprecise to identify the content of the findings EFSC must make. "Standards" refers to rules for measuring quantity, quality, weight, extent, or value. *See* Webster's Third New International Dictionary 2223 (1971). Although Section 2(1) of the measure in part sets forth such rules, the measure more accurately may be identified as setting forth "conditions" EFSC must find to allow TNPP to operate. "Standards" does convey, however, the import of the content of the required findings, particularly when included in the phrase "NUCLEAR WASTE, COST, EARTHQUAKE STANDARDS." The Caption does not fail for using "standards" even though "conditions" may be a better word.

"Conditions" was used in the Caption of an earlier ballot title for a measure substantially similar to the one before us. In *Kafoury v. Roberts,* 303 Or 306, 736 P2d 178 (1987), this court approved the Attorney General's use of "conditions" in the Caption. The earlier approval does not tie our hands, however, because this court also recognized in *Kafoury* that there is more than one way to skin a ballot title. *See Kafoury v. Roberts, supra,* 303 Or at 312-13 (although petitioner's proposed ballot title might comply with statutes, Attorney General's ballot title approved and certified). The Attorney General has certified a Caption that substantially complies with ORS 250.035(1)(a), and that is all we must and do conclude.

## QUESTION

The Question must "plainly [phrase] the chief purpose of the measure." ORS 250.035(1)(b). Petitioner argues that the chief purpose is "to *prohibit the generation of electricity* at Trojan" and that the question must "make that plain." (Emphasis in original.)

Petitioner incorrectly identifies the chief purpose of the proposed measure. Section 2(1) of the measure requires EFSC to make certain findings before TNPP will be "allowed to operate." Requiring EFSC to make certain findings relating to safety constitutes the chief purpose of the measure. If the proposed measure becomes law, generation of electricity will be prohibited at TNPP until EFSC makes those findings, but that is an effect, and not the chief purpose, of the measure. *Cf.*

*June v. Roberts,* 301 Or 586, 589, 724 P2d 267 (1986) (effect of measure was to halt production of electricity).

Accordingly, the Question certified by the Attorney General substantially complies with ORS 250.035(1)(b).

## EXPLANATION

The Explanation must summarize "the measure and its major effect." ORS 250.035(1)(c). Petitioner objects to the use of two words in the Explanation certified by the Attorney General: (1) "Suspends," which petitioner argues creates a misleading impression (petitioner argues that "prohibits" would be more appropriate); and (2) "unless," which petitioner argues should be replaced by "until." Petitioner argues that " 'unless' misleads by suggesting a present possibility of compliance" with the findings required by Section 2(1) of the proposed measure.

"Suspends" does not create a misleading impression—the major effect (as opposed to the chief purpose) of the proposed measure would be to halt indefinitely, until the conditions stated in Section 2(1) were satisfied, the generation of electricity at TNPP. *Cf. June v. Roberts, supra.*

As regards the use of "unless," "until" is preferable to "unless" because "until" is used in Section 2(1) of the measure. Whether TNPP will not be allowed to operate "until" or "unless" the findings required by Section 2(1) are made, however, the meaning is the same or nearly the same. The difference does not amount to failure substantially to comply with ORS 250.035(1)(c).

The ballot title certified by the Attorney General is approved and certified to the Secretary of State.

# APPENDIX

## "AN ACT

**"SECTION 1. FINDINGS.** The people of Oregon find that, if the United States Government fails to provide a permanent repository for the safe disposal of high-level radioactive waste, including irradiated fuel from nuclear fueled thermal power plants, then the people of our state will face potential adverse health effects, environmental degradation, increased electric rates, and the undue financial burden of paying for the construction and maintenance for the indefinite future of a high-level radioactive waste repository in Oregon. Furthermore, the people of Oregon recognize that there exists both a present and projected surplus of electric power in the Pacific Northwest. Therefore, we the people of Oregon enact the following:

**"SECTION 2. CONDITIONS FOR THE FURTHER OPERATION OF NUCLEAR FUELED THERMAL POWER PLANTS.** (1) No nuclear fueled thermal power plant, including the Trojan Nuclear Power Plant, shall be allowed to operate in Oregon until the Energy Facility Siting Council (EFSC) finds, through an evidentiary proceeding, that:

"(a) The operation of a repository for the disposal of high-level radioactive waste produced by the plant, including irradiated nuclear fuel, has been licensed by the United States Government and provides for the immediate acceptance and terminal disposition of such waste with or without provision for retrieval.

"(b) At the time a waste repository becomes available, operation of any nuclear fueled thermal power plant, including the Trojan Nuclear Power Plant, is cost effective, as defined by ORS 469.020(3).

"(c) Any operating nuclear fueled thermal power plant, including the Trojan Nuclear Power Plant, can withstand major earthquakes without harm to the public and complies with the current seismic protection requirements of the United States Nuclear Regulatory Commission (presently set forth in 10 CFR Part 100, Reactor Site Criteria) or any subsequent modification of those criteria to establish more stringent protection requirements. Prior to any such finding, EFSC shall cause an independent geologic investigation and engineering analysis to be performed, paid for by the owner or owners of the operating nuclear fueled thermal power plant, to identify and evaluate all geologic faults underneath and in the

vicinity of the plant, the potential magnitude of subduction zone earthquakes and their effect on the plant and the adequacy of the plant design to withstand major earthquakes.

"(2)   If the Oregon Legislature declares by law that there is an emergency need for electric power which cannot be obtained from any alternative energy resource, including conservation, without violating Section 2(1), then the temporary suspension or repeal of Section 2(1) shall be referred to the voters of this state for their approval or rejection.

"**SECTION 3.   SEVERANCE CLAUSE.** If any section, portion, clause or phrase of this act is for any reason held to be invalid or unconstitutional, the remaining sections, portions, clauses and phrases shall not be affected but shall remain in full force and effect, and to this end the provisions of this act are severable."