Submitted on the record September 25, 1996, ballot title certified as modified March 27, 1997

## Lon T. MABON,
*Petitioner,*

*v.*

## Theodore R. KULONGOSKI,
Attorney General,
State of Oregon,
*Respondent,*

*and*

## Jann CARSON,
Susan Leo and Neil Mann,
*Intervenors.*

(SC S43563)

934 P2d 403

Thomas Walker, Dallas, filed the petition for petitioner.

Philip Schradle, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With him on

the memorandum were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Charles F. Hinkle, Portland, filed a memorandum for intervenors.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, and Durham, Justices.*

FADELEY, J.

Durham, J. filed a dissenting opinion.

---

* Graber, J., did not participate in the consideration or decision of this case.

## FADELEY, J.

■    This ballot title challenge is submitted to the court, without oral argument, on the petition challenging the ballot title, memorandum in opposition, and other material in the record.[1] The petitioner participated in the ballot title drafting process and sent the Secretary of State a letter objecting to the initial draft on generally the same grounds as he argues in his petition. Thus, ORS 250.085(6) presents no bar to our consideration of those arguments.

The statutes require the Attorney General to certify a ballot title for a proposed initiative petition. ORS 250.065(3), 250.067(2). This court reviews that ballot title to determine whether that title is in "substantial compliance" with the requirements of ORS 250.035. ORS 250.085(5). Those requirements are as follows. First, the caption of the ballot title must contain a statement of not more than 10 words that "reasonably identifies the subject matter" of the measure. ORS 250.035(2)(a). Second, the "Yes" and "No" result statements of the ballot title each must contain a simple and understandable statement of not more than 15 words that describes the result if the measure is approved or rejected. ORS 250.035(2)(b) and (c). Finally, the summary of the ballot title must contain "[a] concise and impartial statement of not more than 85 words summarizing the measure and its major effect." ORS 250.035(2)(d).

In summary, the statute directs that the measure's "subject" be identified in the caption, that the "yes" or "no" result statements advise the voter what is the "result" of each of those choices and that the "effects" of a measure be placed in the summary and not elsewhere.

The proposed measure adds seven subsections to Article I, section 3, of the Oregon Constitution. The measure starts by reproducing the present section 3 and its heading, as follows:

---

[1] Other electors who commented on the original draft ballot title have moved to intervene in this challenge, attaching a memorandum to their motion. Their memorandum is part of the record, and we consider it on the merits.

"Section 3. Freedom of religious opinion. No law shall in any case whatever control the free exercise, and enjoyment of religeous (sic) opinions, or interfere with the rights of conscience."

To that existing constitutional guarantee, the measure would add the following:

"1. The People recognize that the family is the foundational unit essential for social health and the good order of society and, therefore, establish as public policy that the concept of family shall be limited to one man and one woman in a marriage covenant and their children, if any, generationally, both natural and adopted, or the surviving members thereof. Government, therefore, has an inherent duty to protect the family while recognizing its own limitation in that government cannot fulfill the role or perform the duties of the family.

"A. A man and a woman who have conceived a child, not having entered into a marriage covenant, and who remain unmarried to one another, are nevertheless in their individual relationship to the child, family; and therefore, are responsible for the child, unless or until such responsibility is terminated by a court of proper jurisdiction.

"(1) With regard to the concepts of subsections 1 and 1A, circumstances involving minors and illegal acts are to be governed by statute, provided that the provisions of this section are not violated.

"B. With reference to the term one man and one woman, the people further recognize and, therefore, establish as public policy, that the concept of the male/female relationship of sexual affection is that which is natural to mankind and that male/female gender is determined at the moment of conception.

"(1) All state and local governments are, therefore, limited in that they may express approval of, promote, sanction or otherwise make acceptable only the will of the people as established in this section.

"(2) The concept of this subsection shall not be construed to preclude laws regulating immoral conduct between the two genders.

"2. These concepts are consistent and compatible with natural law, millennia of moral teaching, self-evident truth, conscience and Almighty God.

"3. Though subsection 1 is established and in effect, no licenses, permits, services or benefits shall be denied any person otherwise due under existing statute; nor shall the holding or exercise of any rights guaranteed by the Constitution of the State of Oregon or of the United States of America be deprived, nullified or diminished.

"4. Though subsection 1 is established and in effect, with regard to public employees, it shall be generally considered that a person's private lawful sexual behavior is a non-job related factor, provided such consideration does not violate any provision of this section.

"5. Though subsection 1 is established and in effect, the extent of its authority over public libraries shall be subject to present U.S. Constitutional precedent as well as local community standards established through the library review process for books, literature and materials.

"6. The Courts, Legislature and Governor are to most strictly protect the intent of the concepts, and stringently apply the limitations established in this section, resolving any doubt in favor of the concepts and in enforcing the limitations.

"7. The PEOPLE INTEND that if any part of this enactment be found unconstitutional, the remaining parts shall survive in full force and effect. This Act shall be in all parts self-executing. For the purposes of the Act, every Oregon resident and non-profit entity doing business in the State of Oregon has standing."

Petitioner objects to the use of a phrase that is repeated in all sections of the ballot title. That phrase is italicized in the following quotation of the Attorney General's certified ballot title:

"AMENDS CONSTITUTION: MAN/WOMAN MARRIAGES, ANY CHILDREN, ONLY FAMILIES *GOVERNMENTS MAY APPROVE*

"RESULT OF 'YES' VOTE: 'Yes' vote limits families *governments may approve* to man/woman marriages, natural/adopted children, survivors.

"RESULT OF 'NO' VOTE: 'No' vote leaves Oregon Constitution without limits on types of families that *governments may approve*.

"SUMMARY: Amends constitution. Limits families *governments may approve* to married man and woman, any natural or adopted children, survivors. However, unmarried parents, including semen donors, are responsible for children unless court orders otherwise. Governments cannot recognize sex changes. Governments cannot deny other constitutional rights, or licenses, benefits, services due under existing statutes. Public employees' private lawful sexual behavior treated as non-job related unless that treatment violates measure's limit on government approval of family. Measure's authority over public libraries subject to local standards established through review process." (Emphasis added.)

Petitioner argues that the recurring phrase "governments may approve" is misleading, prejudicial, and confusing. He points out that that exact phrase is not found in the text of the measure.[2]

The Attorney General responds, in part, that certain alternate wording proposed by petitioner is no better and fails to "convey the primary legal effect of the proposed measure." Intervenors also argue in support of the ballot title provided by the Attorney General.

■■ A ballot title review is purely a creature of statute. *Hand v. Roberts*, 309 Or 430, 433, 788 P2d 446 (1990). The review statutes do not authorize this court to draft a "better" or "improved" title; substantial compliance with the requirements stated in ORS 250.035 is sufficient. Our ballot title review jurisprudence has emphasized restraint.

---

[2] The closest thing to that phrase is found in subsection 1 B(1). It contains the word "governments," and also contains the word "approval" as a part of the phrase "express approval." That subsection limits government to expressing approval of "the will of the people as established" by section 1 of the measure.

The Attorney General argues that the "effect" of the measure is to limit what types of family that governments may approve. The statute calls for a measure's "effect" to be placed in the ballot title summary, a placement found in the Attorney General's certified summary and retained in this court's modification of that summary, as stated below.

We turn to consideration of petitioner's arguments by comparing them with the words of the measure and of the proposed ballot title. That comparison is conducted in the light of statutory requirements for the various parts of a ballot title.

Petitioner contends that this ballot measure, if adopted, will "establish * * * that the concept of family shall be limited." Under section 1 of the measure, "one man and one woman" who are married are a "family," with or without offspring. Under section 1 A, each member of a unmarried couple "who have conceived a child" also is "family" in relation to the child. It follows, as we understand petitioner's argument, that emphasis on what "government may approve" misses the point. Although the concept of "family," as it is defined in the measure, may have a derivative *effect* that is consonant with the phrase used repeatedly by the Attorney General, the *subject* of the measure, *i.e.*, the thing from which all else flows, is the measure's definition of "family."

■     We conclude that petitioner's objection to the use of the "governments may approve" phrase, as it appears in the caption and the "yes" result statement, is well taken. That phrase does not capture the "subject" of the measure or describe its result if adopted. As to the subject of the measure, the caption, with that phrase in it, is nearly incomprehensible. Thus, it neither reasonably identifies the subject of the measure, nor understandably states a "yes" vote result, as the statute requires. The confusing phrase should be deleted from the caption and "yes" result statement. Further, the certified caption mistakenly limits the subject of the measure to marriage situations, whereas section 1 A also establishes that a "family" relationship may exist outside of marriage. Because of section 1 A, we agree with petitioner that the measure's subject also includes unmarried persons in its description of who may make up a "family," at least as to the relationship between each of the unmarried parents and the child. The incorrect limit of the scope of the measure should be deleted from the caption and "yes" result statement.

After examining the text of the measure and the requirements in ORS 250.035, we certify the following as the caption and the "Yes" and "No" result statements:

AMENDS CONSTITUTION: DEFINES AND LIMITS CONCEPT OF "FAMILY," SPECIFIES EFFECTS.

RESULT OF "YES" VOTE: "Yes" vote establishes limits on "family" concept to relationships that include a man and woman.

RESULT OF "NO" VOTE: "No" vote leaves Oregon Constitution without limits on "family" concept.

The change in the "no" result statement is designed to keep the two result statements as parallel as possible. ORS 250.035(3).

Petitioner's points concerning the measure's coverage of unmarried persons with children (as well as couples who are married) also apply to the second sentence of the summary, and we change it accordingly, as stated in more detail below. Petitioner also asserts that the Attorney General's summary is deficient in several other respects. We turn to those assertions.

■       Petitioner argues that the last sentence of the summary "should emphasize and reflect the higher controlling factor, *i.e.*, U. S. Supreme Court precedent, rather than the library review process." He proposes that a reference to the applicability of such precedents be made. Petitioner also argues that the need for change in the last sentence of the summary is supported by the wording of section 5 of the proposed measure, which provides:

"Though subsection 1 is established and in effect, the extent of its authority over public libraries shall be subject to present U.S. Constitutional precedent as well as local community standards established through the library review process for books, literature and materials."

The Attorney General responds that his ballot title summary complies substantially with ORS 250.035(2)(d), because local libraries already must comply with precedent from the United States Supreme Court. Thus, he argues, the measure does not change the law in that area. We agree with

the Attorney General that his ballot title does not violate the substantial compliance standard of ORS 250.085(5) in this respect.

■       Petitioner contends that the word "treated" in the sixth sentence of the summary should be replaced with the word "considered" because, as he argues, "the proposed measure is a statement of policy."[3] Petitioner argues that "treated" implies "action against" rather than a statement of policy. Petitioner also wishes to substitute "consideration" for "treatment," because the verb used in the measure in the relevant section is "considered" rather than "treated." We agree that those verbs, "treated" and "considered," are not synonyms, but the statute instructs us to review only for "substantial compliance." The words are close enough in meaning to meet that standard.

■       With reference to the sixth sentence of the summary, petitioner also argues that the phrase, "government approval of family," should be replaced with "definition of the family." Petitioner further argues that that change is needed in the sixth sentence "to move away from the Attorney General's political bias." We take that as an argument that the sentence is not "impartial," as ORS 250.035(2)(d) requires.[4] Petitioner's argument is not well taken. The measure's relevant text does include a limitation on government expressions of approval. The phrasing proposed by the Attorney General more closely tracks that relevant wording, which limits "expression" of governmental "approval" of "family."

■       The sixth sentence of the Attorney General's summary refers to parts of sections 4 and 1 B(1) of the measure. The subject of section 4 is the private, lawful sexual behavior of public employees. Section 1 B(1) of the measure refers to limits on state and local governments by prohibiting that they "express approval of, promote, sanction or otherwise

---

[3] The proposed sixth sentence reads: "Public employees' private lawful sexual behavior treated as non-job related unless that treatment violates measure's limit on government approval of family."

[4] Petitioner asserted in his written comments to the Secretary of State that the phrase " 'government-approved family' emphatically implies government has the power to decide what a family is going to be" and that the phrase is not a correct representation of the measure's effect.

make acceptable only the will of the people" as established in section 1. Section 4 itself refers back to section 1, which relates to several different concepts in addition to that of the "family." The Attorney General's summary of those provisions recognizes the interrelationship created by the cross reference. It complies substantially with statutory requirements.

■ Petitioner also argues, as stated above, that the summary should state that the word "family" includes both unwed parents, as to their children, and married couples without children under the measure. Such a change would correctly summarize a relevant provision of the measure that, as noted previously, is omitted from the Attorney General's certified ballot title, thus conveying inaccurate information. The correct information must be addressed within the 85-word limit for the summary, if the summary is to meet the statutory standard. Accordingly, we add the words "if any" after "children" in the second sentence of the summary, as petitioner expressly requests, and add the word "family" before the word "responsible" in the third sentence, relating to unmarried couples who have conceived children.

We certify the following ballot title:

AMENDS CONSTITUTION: DEFINES AND LIMITS CONCEPT OF "FAMILY," SPECIFIES EFFECTS.

RESULT OF "YES" VOTE: "Yes" vote establishes limits on "family" concept to relationships that include a man and woman.

RESULT OF "NO" VOTE: "No" vote leaves Oregon Constitution without limits on "family" concept.

SUMMARY: Amends constitution. Limits families governments may approve to man and woman, children, if any, survivors. Unmarried parents, including semen donors, are family responsible for their children unless court orders otherwise. Governments cannot recognize sex changes. Governments cannot deny other constitutional rights, or licenses, benefits, services due under existing statutes. Public employees' private lawful sexual behavior treated as non-job related unless that treatment violates

measure's limit on government approval of family. Measure's authority over public libraries subject to local standards established through review process.

Ballot title certified as modified. This decision shall become effective in accordance with ORAP 11.30(10).

**DURHAM, J.,** dissenting.

In my opinion, the Attorney General's certified ballot title substantially complies with all applicable legal requirements. ORS 250.085(5). Accordingly, this court should certify it.

A proceeding to review the Attorney General's ballot title is not an occasion to refine a ballot title or sharpen its message. ORS 250.085(5) provides that, on judicial review of a ballot title,

> "[t]he court shall review the title for *substantial compliance* with the requirements of ORS 250.035, and shall certify a title meeting this standard to the Secretary of State." (Emphasis added.)

Substantial compliance by the Attorney General with the drafting standards stated in ORS 250.035 is all that is required. *See Nelson v. Keisling*, 313 Or 212, 214, 830 P2d 591 (1992) (statute requires "no more" than substantial compliance with statutory requirements); *June v. Roberts*, 307 Or 270, 274, 767 P2d 70 (1988) ("there is more than one way to skin a ballot title"; court may review the Attorney General's ballot title only for substantial compliance); *Kafoury v. Roberts*, 303 Or 306, 313, 736 P2d 178 (1987) ("It is not this court's function to substitute a ballot title of its own choosing for that provided by the Attorney General unless we can say affirmatively that the ballot title provided by the Attorney General 'does not substantially comply with the requirements of ORS 250.035.' ").

Petitioner and the Attorney General are in sharp disagreement about the subject, the result of potential enactment, and the major effects of the measure before the court. On the one hand, petitioner argues that the measure principally concerns legal definitions or concepts of what constitutes, or should constitute, a "family." Petitioner assumes

that the legal consequences, for state government and individuals, of adoption of the measure are secondary in importance, as a description of the measure's subject, to the definitions and concepts of family described in the measure.

On the other hand, the Attorney General argues that the measure's subject is best described in terms of the legal consequences for state government and individuals of the potential adoption of the measure's definitions and concepts of a "family." The Attorney General urges the court to recognize that legal definitions and concepts about virtually any subject are abstractions unless a voter understands their actual impact on government and individuals.

That fundamental disagreement forms the basis for the parties' dispute over the Attorney General's choice to incorporate the phrase "governments may approve" into the caption and result statements. Even petitioner's claim that the Attorney General's ballot title is "confusing" is little more than an assertion that the ballot title will "confuse" voters because it does not convey petitioner's view of the measure's subject.

The court's task on review is *not* to decide which side, petitioner or the Attorney General, should prevail in that debate. Rather, in accordance with ORS 250.085(5), the court's task is to determine *whether the Attorney General's choice to use the phrase "governments may approve" substantially complies with ORS 250.035*. Given that standard of review, this court should affirm the Attorney General's choice.

The phrase "governments may approve" accurately summarizes the substance of section 1 B(1) of the measure, which provides:

> "All state and local governments are, therefore, limited in that they may express approval of, promote, sanction or otherwise make acceptable only the will of the people as established in this section."

In addition to that express restriction, the measure would enact restrictions on the behavior of public employees (section 4) and the operation of public libraries (section 5), and further states in section 6:

"The Courts, Legislature and Governor are to most strictly protect the intent of the concepts, and stringently apply the limitations established in this section, resolving any doubt in favor of the concepts and in enforcing the limitations."

The measure's incorporation in section 1 B(1) of an explicit textual limitation on the types of families that Oregon "governments * * * may express approval of" (or "promote, sanction or otherwise make acceptable") amply supports the Attorney General's phrasing. In my view, the whole point of this proposed initiative measure is to limit what Oregon governments may do with respect to relationships *other than* the "family" relationships that the measure identifies. The other textual restrictions cited above serve only to reinforce the measure's limitations in section 1 B(1) on governmental approval of families that do not fall within the measure's definitions. Consequently, those additional restrictions simply underscore the correctness of the Attorney General's choice of words.

The majority sides with petitioner, but its cursory explanation of its reasons for doing so is unpersuasive. The majority rejects the Attorney General's ballot title because "the thing from which all else flows[ ] is the measure's definition of 'family.' " 325 Or at 127. With respect, that begs the key question: *What* flows from the measure's "definition" of family? The Attorney General correctly argues that, in law, "definitions" and "concepts" of sensitive subjects take on genuine significance to voters and petition signers when they learn *how* new legal "definitions" and "concepts" actually will affect their lives and their government.[1] The majority fails to explain why the Attorney General's choice to disclose the actual impact of the measure, rather than its more abstract definitional features, is a choice unavailable to him under the substantial compliance standard of review in ORS 250.085(5).

---

[1] To illustrate the point, consider hypothetical ballot measures that would redefine other terms that carry significant legal and social import, such as "civil rights," "local control of public schools," "affirmative action," "endangered species," "old growth forest," "religious freedom," "equal privileges and immunities," "aggravated murder," and "private property."

Apart from the defects in *what* the majority says about the measure's subject, I also disagree with *how* the majority says it in the revised ballot title. ORS 250.035(2)(a) provides that a caption shall consist of "not more than 10 words," not counting the words "Amends Constitution." The majority certifies a caption of only 8 words, including the words "specifies effects." The Attorney General's caption uses all of the available 10 words. Significantly, the Attorney General also *identifies* the measure's principal legal consequence, *i.e.*, the limitation on government approval of other family relationships. The majority's phrase, "specifies effects," communicates nothing about the measure's subject matter or legal consequences. The majority provides no explanation for its use of the uninformative phrase "specifies effects" instead of a true description of the measure's subject matter. For this additional reason, the Attorney General's caption better serves to "reasonably identif[y]" the measure's subject matter in the format contemplated by ORS 250.035(2)(a).

I would certify the Attorney General's ballot title. Accordingly, I dissent.