Argued and submitted November 23, 1999, ballot title certified as modified
February 10, 2000

Brian DIRKS,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S46917)

993 P2d 808

Gregory W. Byrne, Byrne & Associates, Portland, argued the cause and filed the brief for petitioner. With him on the brief was Molly E. Hickman, Portland.

Kaye Ellen McDonald, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With her on the brief was Hardy Myers, Attorney General.

DURHAM, J.

## DURHAM, J.

Petitioner seeks review of a ballot title. Petitioner is an elector who timely submitted comments concerning the Attorney General's draft ballot title. Therefore, he is entitled to petition for review of the Attorney General's certified ballot title. ORS 250.085(2).

The Attorney General certified the following ballot title:

"AMENDS CONSTITUTION: LIMITS STATE INCOME TAX GROWTH; REQUIRES TOBACCO SETTLEMENT REVENUE REFUND

"RESULT OF 'YES' VOTE: 'Yes' vote limits income tax growth to inflation, population increases; requires tobacco settlement revenue refund.

"RESULT OF 'NO' VOTE: 'No' vote does not limit income tax growth; retains tobacco settlement revenue for public purposes.

"SUMMARY: Amends Constitution. Limits state income tax revenue growth. State may retain income tax revenues only up to amount collected in previous biennium, adjusted for inflation, population increases. Requires refund of 'surplus personal state income taxes' to taxpayers, distribution of 'surplus corporate state income taxes' to cities/counties. Any funds received directly or indirectly from tobacco settlement must be distributed to personal income taxpayers. If voters approve both this measure and a measure dedicating tobacco money to health security fund, runoff election required to resolve conflict."

Petitioner objects to each segment of the Attorney General's ballot title. We review those objections in order, bearing in mind that we must decide only whether the Attorney General's ballot title complies substantially with statutory requirements. ORS 250.085(5).[1] *See also Mabon v. Kulongoski*, 325 Or 121, 126, 934 P2d 403 (1997) ("The

---

[1] ORS 250.085(5) states:

"The court shall review the title for substantial compliance with the requirements of ORS 250.035, and shall certify a title meeting this standard to the Secretary of State."

review statutes do not authorize this court to draft a 'better' or 'improved' title; substantial compliance with the requirements stated in ORS 250.035 is sufficient.").

The initiative measure under consideration would add the following provisions to the Oregon Constitution:

"SURPLUS STATE INCOME TAX REFUND ACT OF 2000

"BE IT ENACTED BY THE PEOPLE OF THE STATE OF OREGON:

"The Constitution of the State of Oregon is hereby amended by adding the following section:

"Section 1. Not later than 180 days after the end of each biennium, the state shall refund surplus personal state income taxes to state income tax payers proportionately, based on the amount paid by each taxpayer relative to the total amount of taxes paid by all personal state income tax payers in the biennium. Not later than 180 days after the end of each biennium, the state shall distribute surplus corporate state income taxes to cities and counties.

"(a)   For purposes of this section, for the biennium beginning July 1, 2001, 'surplus personal state income taxes' means all personal state income taxes collected by the state, which are in excess of the sum of the amount of personal state income taxes collected by the state in the previous biennium and not refunded to taxpayers, plus an adjustment equal to the percentage rate of inflation, if any, for the last two calendar years ending prior to the first day of the biennium and an adjustment equal to the percentage increase, if any, in the population of the state for the same period. For purposes of this section, 'inflation' shall be measured by the federal implicit price deflator for state and local government purchases or its successor index.

"(b)   For each biennium beginning on or after July 1, 2003, the amount of 'surplus personal state income taxes' to be refunded shall be calculated by deducting from the total amount of personal state income taxes collected in the biennium an amount equal to the amount of personal state income taxes collected and retained by the state in the previous biennium, which amount the state was not required to refund under this section;

and adding to that amount an adjustment equal to the percentage rate of inflation, if any, for the last two calendar years ending prior to the first day of the biennium, plus the percentage increase, if any, in the population of the state for the same period.

"(c)  Four [*sic*] purposes of this section, any money received by the state as a result of a settlement, reached directly or indirectly, with one or more tobacco companies shall be considered a reimbursement to the state of personal state income taxes spent on increased health care costs due to tobacco related illnesses, and shall be refunded to the personal state income tax payers who paid state income taxes in the last biennium prior to the biennium in which the tobacco settlement money was received. If the state's interest in or claim to tobacco settlement money is used in any way as security to borrow money or to sell bonds, the money received by the state from such borrowing or from the sale of such bonds also shall be considered a reimbursement to the state of personal state income taxes and shall be refunded to personal state income tax payers.

"(d)  Surplus corporate state income taxes shall be calculated using the same method set forth in subsections (a) and (b) of this section for personal state income taxes, including the annual adjustments for inflation and increases, if any, in the population of the state.

"(e)  The state shall use consistent accounting, in accordance with generally accepted accounting principles, for all purposes related to this Amendment.

"(f)  In the event of deflation or in the event of a decline in the population of the state during a biennium, there shall be no negative adjustment in the amount of money the state may retain in the next biennium as a result of either statistic. For example, if there was a two percent reduction in the population of the state during the previous biennium, and inflation for the period was five percent, the amount of tax that could be retained by the state would be five percent more than for the previous biennium.

"(g)  If after the effective date of this 2000 Amendment, the state begins to budget on an annual basis, rather than

a biennial basis, the calculations required by this section shall be made on an annual basis, provided that the calculation of the amount of personal state income tax revenue the state must refund, if any, shall be made using inflation and population growth, if any, for the last calendar year ending prior to the first day of each fiscal year.

"(h) If a measure dedicating tobacco settlement money to a health security fund is approved by voters in the same election in which this measure is approved, the conflicting provisions shall both be placed before the voters as two alternatives and the one receiving the most votes shall prevail.

"(i) If any phrase, clause, or part of this section is invalidated by a court of competent jurisdiction, the remaining phrases, clauses, and parts shall remain in full force and effect."

As an initial matter, the Attorney General points out that the measure at issue here, known as proposed initiative 80, is nearly identical to another measure, proposed initiative 62, which the same chief petitioner proposes for the same election. The parties agree that the principal difference between those measures is that proposed initiative 80 requires a runoff election between it and a legislative referral, known as House Bill 2007 (1999), which would create a health security fund, if the voters approve both measures. No elector challenged the Attorney General's certified ballot title for proposed initiative 62. Despite ORS 250.035(6),[2] the Attorney General certified identical captions and result statements for each measure. The Attorney General asserts that the following statement in *Carlson v. Myers*, 327 Or 213, 227, 959 P2d 31 (1998), *compels* this court to certify the same caption and result statements that the Attorney General certified for the nearly identical proposed initiative 62:

"As this court held in *Rooney* [*v. Kulongoski (Elections Division #13)*, 322 Or 15, 23, 909 P2d 1143 (1995)], when proposed initiative measures are themselves very similar or nearly identical, there may be 'too great a risk' of voter

---

[2] ORS 250.035(6) provides:

"To avoid confusion, a ballot title shall not resemble any title previously filed for a measure to be submitted at that election."

confusion created by the certification of *different* ballot titles. 322 Or at 46, 48, 51."

(Emphasis in original.)

We disagree. As explained below, the Attorney General's ballot title for proposed initiative 80 does not comply substantially with ORS 250.035.[3] The modifications that we require, described below, eliminate the resemblance between the two ballot titles. Thus, the ballot title that we certify here satisfies ORS 250.035(6).

We are mindful that certifying a different ballot title for proposed initiative 80, despite the similarities between that measure and proposed initiative 62, risks the confusion that results from the use of dissimilar ballot titles for similar measures. *See Carlson*, 327 Or at 227 (discussing that risk). But that risk inheres in the present ballot title review scheme, in which not all ballot titles receive judicial review for substantial compliance with statutory requirements. The Attorney General's suggested response to that risk—certification of identical ballot titles—would require the court to disregard the inadequacies of the ballot title now under consideration. Because that course would compound, not avoid, the problem of confusion, we decline to take it.

■■ We turn to petitioner's challenge to the Attorney General's ballot title caption. The ballot title caption must reasonably identify, within 10 words, the subject matter of the measure. ORS 250.035(2)(a) (1997). To determine whether a caption accurately states the subject matter of a proposed initiative measure, "we examine the text of the measure itself * * *." *Doell v. Myers*, 328 Or 635, 640, 984 P2d 266 (1999).

Petitioner argues that the Attorney General's caption is inadequate because the phrase "limits state income tax growth" identifies an effect of the measure, not its subject. The Attorney General responds that that phrase is accurate in this context, because the refund requirement in the

---

[3] Our decision here demonstrates that, as a practical matter, the identical caption and result statements for proposed initiative 62 also do not comply with statutory requirements. However, this court has no authority in this proceeding to modify the ballot title for that proposed initiative.

measure is tantamount to a limitation on the growth of the state income tax.

The problem with the phrase in question and the Attorney General's argument is that they misstate the measure. If adopted, the measure would not limit the growth of the state income tax or prevent increases in income tax rates. The measure does not purport to affect the state's authority to levy and collect income taxes in any amount. Instead, the measure establishes a method for calculating what the measure calls "surplus" state income taxes. If the specially defined "surplus" condition comes into existence, then the measure requires state government to refund that sum proportionately to state income tax payers and, thus, prevents state government from using those funds for any public purpose.

■  Representations in a caption about how a measure would modify existing law must not be misleading. *See Rice v. Myers*, 326 Or 419, 423, 952 P2d 533 (1998) (so stating); *Sizemore v. Kulongoski*, 322 Or 229, 236, 905 P2d 1146, *mod on recons* 322 Or 387, 908 P2d 825 (1995) (ballot title must not misstate existing law, even by implication). The phrase "limits state income tax growth" in the caption is misleading, because it promises a limitation on the existing state income tax laws that the measure would not produce. Neither is the refund mechanism described in the measure tantamount to an income tax limitation, as the Attorney General claims. That mechanism would operate after levy and collection of whatever income taxes the state desires to collect. The measure does not limit the growth of the income tax itself. We conclude that petitioner is correct that the caption is misleading and requires modification.

Petitioner also contends that the Attorney General's caption fails to mention the principal subject of the measure, *i.e.*, the requirement that state government refund "surplus" state income taxes, as defined in the measure, to taxpayers. The Attorney General responds that he correctly declined to use the term "surplus" in the caption because it is confusing and argumentative in this context. We agree with the Attorney General that the caption should not describe the amount refunded under the measure as "surplus" income taxes. The term "surplus" in this context implies that the refunded taxes

are "more than sufficient for use or need * * *." *Webster's Third New Int'l Dictionary*, 2301 (unabridged ed 1993). In our view, using the term "surplus" in the ballot title caption might be misleading. The sole reason that might justify using the term "surplus" in the caption to describe the personal and corporate income tax funds to which the measure refers is the special definition and calculation method that the measure employs, not any generally accepted definition or usage of the term "surplus."

The fact that the measure uses the term "surplus" to describe the amount to be refunded does not require a different answer. We have noted in the past that

> "the potential exists for the proponents of an initiative measure either intentionally or unintentionally to use words in the measure that obfuscate the subject, chief purpose, summary, or major effect of the measure."

*Bernard v. Keisling*, 317 Or 591, 596, 858 P2d 1309 (1993). To avoid the potential to mislead voters, we have resisted attempts to incorporate into the ballot title caption terms or phrases in a measure that, due to specialized definitions or usage out of familiar context, tend more to promote or defeat passage of the measure than to describe its substance accurately. For example, in *Mabon v. Keisling*, 317 Or 406, 412-13, 856 P2d 1023 (1993), the measure's chief petitioner asked this court to incorporate the phrase "minority status" into the ballot title caption, because the measure used that phrase. This court declined to do so, because that phrase had "no recognized meaning outside of this measure, the phrase is not self-defining, and [thus] would do little to inform the voters of the measure's subject." *Id.* at 412. The same reasoning militates against incorporating the specially defined term "surplus" into the ballot title caption for this measure. Therefore, we reject petitioner's contrary contention.

Finally, petitioner argues that, although the phrase "requires tobacco settlement revenue refund" in the Attorney General's caption does refer to a subject of the measure, that phrase, by itself, is misleading, because it fails to indicate that the taxpayers, not tobacco companies, will receive the refund. We agree that that phrase is misleading, but petitioner's suggested amendment does not address the problem

satisfactorily. The tobacco settlement revenue to which the measure refers is not a refund to the taxpayers, as petitioner claims. A "refund" is "a sum that is paid back : REPAY-MENT." *Webster's Third New Int'l Dictionary* at 1910. The measure purports to treat the settlement proceeds of state lit-igation against tobacco companies as a "reimbursement" to personal income tax payers, but that special designation in the measure does not reflect the common meaning of a "refund" of taxes. Stated accurately, the measure requires the state to *distribute* tobacco settlement proceeds to per-sonal income tax payers. The Attorney General acknowl-edged that point by using the word "distributed" in his sum-mary of the measure's effect on tobacco settlement revenue.

Because the word "refund" is inaccurate and mis-leading in this context, the Attorney General's phrase does not comply substantially with statutory requirements. To remedy that problem, we will substitute the term "distrib-utes" for "refunds" in the caption. Additionally, because the word "refunds" appears in the "yes" vote result statement and the summary, and conveys the same misleading mean-ing in those contexts, we will make similar conforming changes to those parts of the ballot title. *See Garst v. Myers*, 329 Or 529, 535, 992 P2d 451 (1999) (following that practice).

As a consequence of the foregoing discussion, we modify the caption as follows:

AMENDS CONSTITUTION: CONDITIONALLY
REFUNDS CERTAIN TAXES, RESTRICTS
EXPENDITURES; DISTRIBUTES TOBACCO
SETTLEMENT REVENUE

In challenging the Attorney General's "yes" and "no" result statements, petitioner repeats his criticisms of the Attorney General's caption. As discussed above, we agree in part with those criticisms and adopt corresponding changes to bring the "yes" and "no" result statements into substantial compliance with ORS 250.035(2)(b) and (c) (1997). We reject petitioner's further contention that the Attorney General's description in the result statements of the tobacco settlement revenue issue fails to satisfy the preference for parallelism in

ORS 250.035(3).[4] The Attorney General's result statements, as pertinent, are parallel "to the extent practical." The statute requires no more. *Carson v. Myers*, 326 Or 248, 257, 951 P2d 700 (1998).

As a consequence of the foregoing, we adopt the following "yes" and "no" vote result statements:

RESULT OF "YES" VOTE: "Yes" vote ties tax refund to previous collections, inflation, population increases; distributes tobacco settlement revenue.

RESULT OF "NO" VOTE: "No" vote retains income taxation and refund laws; retains tobacco settlement revenue for public purposes.

Petitioner's challenges to the Attorney General's summary are similar to those discussed above in connection with the caption.[5] Because the summary does not comply substantially with ORS 250.035(2)(d) (1997) for the reasons already discussed, we will adopt changes to the summary that conform to the changes discussed above in connection with the caption. To accommodate those changes within the statutory 85-word limit, we will alter the wording of the last sentence of the Attorney General's summary in a way that does not change its substance.

Petitioner further challenges the Attorney General's summary because it fails to describe the tax refund as a "proportionate" refund and states that the measure would require tobacco settlement revenue to be distributed, rather than "refunded," to taxpayers. For the reasons already discussed, we do not agree that the latter criticisms establish that the Attorney General's summary fails to comply substantially with statutory requirements.

We modify the Attorney General's summary as follows:

---

[4] ORS 250.035(3) provides:

"The statements required by subsection (2)(b) and (c) of this section shall be written so that, to the extent practical, the language of the two statements is parallel."

[5] Petitioner does not challenge the Attorney General's use of the term "surplus" in the summary.

SUMMARY: Amends Constitution. Creates conditional income tax refund, restricts expenditures. State may retain income tax revenues only up to amount collected in previous biennium, adjusted for inflation, population increases. Requires refund of "surplus personal state income taxes" to taxpayers, distribution of "surplus corporate state income taxes" to cities/counties. Any funds received directly or indirectly from tobacco settlement must be distributed to personal income taxpayers. If voters approve both this measure and measure dedicating tobacco money to health security fund, runoff election required to resolve conflict.

We certify the following ballot title for proposed initiative 80:

### AMENDS CONSTITUTION: CONDITIONALLY REFUNDS CERTAIN TAXES, RESTRICTS EXPENDITURES; DISTRIBUTES TOBACCO SETTLEMENT REVENUE

RESULT OF "YES" VOTE: "Yes" vote ties tax refund to previous collections, inflation, population increases; distributes tobacco settlement revenue.

RESULT OF "NO" VOTE: "No" vote retains income taxation and refund laws; retains tobacco settlement revenue for public purposes.

SUMMARY: Amends Constitution. Creates conditional income tax refund, restricts expenditures. State may retain income tax revenues only up to amount collected in previous biennium, adjusted for inflation, population increases. Requires refund of "surplus personal state income taxes" to taxpayers, distribution of "surplus corporate state income taxes" to cities/counties. Any funds received directly or indirectly from tobacco settlement must be distributed to personal income taxpayers. If voters approve both this measure and measure dedicating tobacco money to health security fund, runoff election required to resolve conflict.

Ballot title certified as modified. This decision shall become effective in accordance with ORAP 11.30(10).