Argued and submitted March 22, ballot title certified as modified April 6, 2000

Kevin C. EARLS,
*Petitioner,*

*v.*

Hardy MYERS,
Oregon Attorney General,
*Respondent.*

(SC S47326)

999 P2d 1134

Bruce A. Bishop, Harrang Long Gary Rudnick, P.C., Salem, argued the cause and filed the petition for petitioner. With him on the petition was James E. Mountain, Jr., Salem.

Rolf Moan, Assistant Attorney General, Salem, argued the cause and filed the answering memorandum for respondent. With him on the memorandum were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

DURHAM, J.

Van Hoomissen, J., dissented and filed an opinion in which Riggs, J., joined.

## DURHAM, J.

■ Petitioner seeks review of a ballot title for a proposed initiative measure. Petitioner is an elector who timely submitted comments concerning the Attorney General's draft ballot title. Therefore, he is entitled to petition for review of the Attorney General's certified ballot title. ORS 250.085(2).

In addition to defining the terms used and limiting its scope, the proposed measure would enact the following provisions as a statute:

"*SECTION 2.* All managed health care plans offered by a managed care entity, all health insurance policies and all casualty insurance policies provided to residents of Oregon shall:

"(1) Provide for patient freedom of choice of health care physician and primary care physician among all physicians providing medical services within the physician's professional scope of practice; and

"(2) Provide the same policy benefits, rate of reimbursement and extent of covered expenses for all health care physicians and primary care physicians provided the physician is providing care within that physician's professional scope of practice.

"*SECTION 3.* (1) All managed care plans offered by a managed care entity, all health insurance policies and all casualty insurance policies subject to sections 1 to 5 of this 2000 Act may require the enrollee or insured person to select a health care physician as a primary care physician. Selection of a primary care physician limits the applicability of section 2(1) of this 2000 Act to the selected primary care physician and referrals by the primary care physician to other health care physicians. Enrollees and insured persons are permitted to change primary care physicians at will, except that a managed care plan, health insurance policy or casualty insurance policy may restrict the enrollee or insured person to changing primary care physician no more than twice in a 12-month period.

"(2) An enrollee or insured person has the right to select a health care physician or primary care physician in accordance with the following categories:

"(a)  For medical services, a Doctor of Medicine or a Doctor of Osteopathy licensed in accordance with ORS chapter 677, or a Doctor of Chiropractic licensed in accordance with ORS chapter 684;

"(b)  For dental care service, a Doctor of Medical Dentistry or a Doctor of Dental Science as licensed in accordance with ORS chapter 679; and

"(c)  For vision care services, a Doctor of Medicine licensed in accordance with ORS chapter 677 or a Doctor of Optometry licensed in accordance with ORS chapter 683."

The Attorney General certified the following ballot title for the measure:

"REQUIRES: FREEDOM TO CHOOSE HEALTH CARE PROVIDER; EQUAL REIMBURSEMENT, COVERAGE

"RESULT OF 'YES' VOTE: 'Yes' vote requires patient's freedom to choose health care provider; requires equal reimbursement rates, coverage.

"RESULT OF 'NO' VOTE: 'No' vote rejects requiring freedom to choose health care provider; rejects equal reimbursement rates, coverage.

"SUMMARY: Modifies health care provider contracting options by requiring health and casualty insurance policies, managed health care plans to provide same reimbursement rates, coverage, regardless of care provider. For medical services, allows patient's choice of physician or chiropractor as primary care, health care provider. For vision services, allows choice of ophthalmologist, optometrist. Patients may change primary care provider, but can be limited to two changes over twelve months. Excludes Oregon Medical Assistance Program, Oregon Health Plan, student health insurance programs, public employee benefits, inmates, workers' compensation."

Petitioner objects to each segment of the Attorney General's ballot title. We review those objections in order, bearing in mind that we must decide only whether the Attorney General's ballot title complies substantially with statutory requirements. ORS 250.085(5).[1] *See also Mabon v. Kulongoski*, 325 Or 121, 126, 934 P2d 403 (1997) ("The

---

[1] ORS 250.085(5) provides:

review statutes do not authorize this court to draft a 'better' or 'improved' title; substantial compliance with the requirements stated in ORS 250.035 is sufficient.").

■ ■   Petitioner first challenges the Attorney General's ballot title caption. The ballot title caption must reasonably identify, within 10 words, the subject matter of the measure. ORS 250.035(2)(a) (1997).[2] To determine whether a caption accurately states the subject matter of a proposed initiative measure, "we examine the text of the measure itself * * *." *Doell v. Myers*, 328 Or 635, 640, 984 P2d 266 (1999).

Petitioner first argues that the Attorney General's caption fails to identify the subject matter of the measure because it does not mention how the measure would change the ways in which physicians and other specified health care providers may contract and be paid for their services. The Attorney General responds that the caption reasonably identifies the subject matter of the measure because it states that the measure "requires * * * equal reimbursement, coverage," thereby informing voters that the subject of the measure encompasses the options for insurers and managed health care plans when contracting with health care providers.

We agree with the Attorney General. The measure requires that specified health care plans and insurance policies "[p]rovide the same policy benefits, rate of reimbursement and extent of covered expenses" to specified health care providers. The phrase "requires * * * equal reimbursement, coverage" reasonably identifies that subject matter within the constraints of the word limitation imposed on the caption

"The court shall review the title for substantial compliance with the requirements of ORS 250.035, and shall certify a title meeting this standard to the Secretary of State."

[2] The 1999 Legislature amended ORS 250.035(2) (1997) in several respects. Or Laws 1999, ch 793, § 1. However, section 3 of that 1999 enactment provides, in part:

"(1) The amendments to ORS 250.035 by section 1 of this 1999 Act do not apply to any ballot title prepared for:

"(a) Any initiative petition that, if filed with the Secretary of State with the required number of signatures of qualified electors, will be submitted to the people at the general election held on the first Tuesday after the first Monday in November 2000[.]"

The present proposed measure is one of those to which the 1999 act does not apply. We therefore apply the pertinent provisions of ORS 250.035(2) (1997).

and, thus, substantially complies with statutory requirements.

■     Petitioner further argues that the caption uses terminology that is not objective. Particularly, petitioner contends that the phrase "freedom to choose" is inappropriate for a ballot title because it is not neutral and might mislead voters into supporting the proposal without understanding its true effects. The Attorney General responds that the phrase "freedom to choose" accurately identifies the subject matter of the measure by indicating that the measure would prevent insurers and managed health care plans from restricting patients' freedom to choose their own health care providers. The Attorney General further observes that the phrase mirrors wording used in the measure itself.

■ ■     We agree with petitioner that, in this context, the phrase "freedom to choose" is likely to prejudice voters regarding the measure. *See Marr v. Thornton*, 237 Or 503, 504, 392 P2d 458 (1964) (deleting phrase "right-to-work" from ballot title caption as slogan that amounted to argument for measure and that likely would create prejudice). It is true that the phrase "freedom to choose" appears in the measure itself. However the Attorney General and this court are not constrained to certify a ballot title that is slanted toward passage or defeat of the measure. *See Dirks v. Myers*, 329 Or 608, 616, 993 P2d 808 (2000) (court has resisted attempts to incorporate into ballot title terms or phrases that "tend more to promote or defeat passage of the measure than to describe its substance accurately"). Proponents of a measure are not entitled to engineer a favorable ballot title by incorporating politically inflated terms or phrases in the text of the measure in order to advance its passage. *Cf. Bernard v. Keisling*, 317 Or 591, 596-97, 858 P2d 1309 (1993) (court will not hesitate to look beyond words of measure if those words obfuscate subject, chief purpose, summary, or major effect of measure).

We have considered petitioner's other objections to the caption and reject them without further discussion.

We conclude that petitioner is correct that the caption does not comply substantially with statutory requirements and requires modification to remove the phrase "freedom to choose." To remedy that problem, we rephrase the

caption to state that the measure would afford to patients the opportunity to select their health care provider. Additionally, because the phrase "freedom to choose" also appears in the "yes" and "no" vote result statements, and conveys the same meaning in those contexts, we make similar conforming changes to those parts of the ballot title to conform to the changes that we make to the caption. *See Garst v. Myers*, 329 Or 529, 535, 992 P2d 451 (1999) (following that practice).

As a consequence of the foregoing discussion, we modify the caption as follows:

PATIENTS MAY CHOOSE HEALTH CARE PROVIDER; REQUIRES EQUAL REIMBURSEMENT, COVERAGE

In challenging the Attorney General's "yes" and "no" result statements, petitioner repeats his criticisms of the Attorney General's caption. As discussed above, we agree in part with those criticisms and adopt corresponding changes to bring the "yes" and "no" result statements into substantial compliance with ORS 250.035(2)(b) and (c) (1997). In addition, we agree with petitioner that the Attorney General's "no" vote result statement is misleading. That is so because, by using the term "rejects," the "no" vote result statement incorrectly implies that a rejection of the measure might cause voters to lose their present opportunity to select a health care provider and to receive existing equal (or other) rates for reimbursement and coverage under managed care plans and insurance contracts now in effect. As petitioner correctly points out, the "no" vote result statement should state accurately what voters would retain, under their existing legal or contractual arrangements, if they defeat the measure.

We modify the "yes" and "no" vote result statements as follows:

RESULT OF "YES" VOTE: "Yes" vote would permit patients to choose health care provider; requires equal reimbursement rates, coverage.

RESULT OF "NO" VOTE: "No" vote retains current options to choose health care provider, and obligations regarding reimbursement, coverage.

Finally, petitioner challenges the Attorney General's summary. We have considered petitioner's arguments and conclude that the Attorney General's summary complies substantially with ORS 250.035(2)(d) (1997). Accordingly, we do not alter the Attorney General's summary.

We certify to the Secretary of State the following ballot title:

PATIENTS MAY CHOOSE HEALTH CARE PROVIDER; REQUIRES EQUAL REIMBURSEMENT, COVERAGE

RESULT OF "YES" VOTE: "Yes" vote would permit patients to choose health care provider; requires equal reimbursement rates, coverage.

RESULT OF "NO" VOTE: "No" vote retains current options to choose health care provider, and obligations regarding reimbursement, coverage.

SUMMARY: Modifies health care provider contracting options by requiring health and casualty insurance policies, managed health care plans to provide same reimbursement rates, coverage, regardless of care provider. For medical services, allows patient's choice of physician or chiropractor as primary care, health care provider. For vision services, allows choice of ophthalmologist, optometrist. Patients may change primary care provider, but can be limited to two changes over twelve months. Excludes Oregon Medical Assistance Program, Oregon Health Plan, student health insurance programs, public employee benefits, inmates, workers' compensation.

Ballot title certified as modified. This decision shall become effective in accordance with ORAP 11.30(10).

**VAN HOOMISSEN, J.,** dissenting.

I respectfully dissent. In my view, the Attorney General's certified ballot title substantially complies with the requirements of ORS 250.035 (1997). ORS 250.085(5).

The unspoken premise on which this court's modification decision is based is that it does not violate the principle of separation of powers for this court to rewrite a certified ballot title. *See Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 55, 902 P2d 1143 (1995) (Unis, J., dissenting)

(arguing that judicial modification of ballot titles offends Article III, section 1, of the Oregon Constitution); *Sizemore v. Kulongoski*, 322 Or 229, 237, 905 P2d 1146 (1995) (Durham, J., concurring) (same). The court should revisit that premise.

Riggs, J., joins in this opinion.