On petition to review ballot title filed August 10, considered and under advisement on November 17, 2009, ballot title referred to Attorney General for modification February 11, petitioner's objections to modified ballot title filed February 19, Attorney General's certified ballot title referred to Attorney General by opinion for further modification March 18, 2010
See 348 Or 63, 228 P3d 549 (2010)

Jerry CARUTHERS,
*Petitioner,*

*v.*

John R. KROGER,
Attorney General,
State of Oregon,
*Respondent.*

(SC S057678)

227 P3d 723

Thomas K. Doyle, Bennett, Hartman, Morris & Kaplan, LLP, Portland, filed the petition and reply memorandum for petitioner.

Douglas F. Zier, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With him on the memorandum were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

GILLETTE, J.

## GILLETTE, J.

Petitioner seeks review of the certified ballot title for Initiative Petition 43 (2010). *See* ORS 250.085(2) (describing ballot title review process). Initiative Petition 43 (2010), if approved, would add to the Oregon Constitution's provisions concerning the collection of voter signatures and the qualification of proposed initiative and referendum measures for submission to the voters. We review the certified ballot title for substantial compliance with statutory requirements. ORS 250.085(5).

The complete text of Initiative Petition 43 (2010) is as follows:

"In order to respect voter participation in the initiative and referendum process, and in order to ensure the integrity of public officials in reviewing signatures on petitions, the People add the following provision to Section 1, Article IV of their Constitution:

"Every registered voter who has signed an initiative or referendum petition that has been filed as provided in section (1)(2)(e) or section (1)(3)(b) of this Article is guaranteed the right to have his or her signature counted for purposes of determining whether the initiative or referendum petition has obtained enough signatures to qualify for submission to the voters. No statute or rule may restrict this right."

The Attorney General certified the following ballot title for that proposed constitutional amendment:

**"Amends Constitution: Guarantees registered voter right to have signature counted in determining initiative/referendum qualification for ballot**

**"Result of 'Yes' Vote:** 'Yes' vote requires every registered voter's signature on initiative/referendum petitions to be counted in determining if sufficient number were collected to qualify measure for ballot.

**"Result of 'No' Vote:** 'No' vote retains laws regarding acceptance, verification of signatures on initiative/referendum petitions, including use of statistical sampling in determining if sufficient number were collected.

**"Summary:** Amends constitution. Initiative/referendum petitions qualify for submission to voters only when

they are signed by sufficient number of qualified voters; exact number depends on type of measure. Currently, laws and administrative rules establish requirements for signature collection and verification to prevent fraud, forgery, or improper signature gathering. Instead of counting each signature submitted, elections officials use statistical sampling of signatures from valid petition forms to determine if sufficient number of qualified voter signatures were collected. Measure guarantees registered voters right to have their signatures counted in determining if sufficient number of signatures were submitted to qualify measure for ballot; prohibits any statute or administrative rule from restricting this right; may invalidate existing constitutional provisions, statutes, administrative rules regarding initiative/referendum petition requirements. Other provisions."

Petitioner is an elector who timely submitted comments regarding the draft ballot title, and who therefore is entitled to challenge the certified ballot title in this court. Petitioner contends that the ballot title's caption, its "yes" and "no" vote result statements, and its summary all are insufficient. Before addressing petitioner's specific challenges, however, we describe briefly the existing legal context in which Initiative Petition 43 (2010), if it were approved, would apply.

Article IV, section 1(2)(a), of the Oregon Constitution provides that

"[t]he people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them * * *."

Section (3)(a) of that same Article similarly provides that

"[t]he people reserve to themselves the referendum power, which is to approve or reject at an election any Act, or part thereof, of the Legislative Assembly that does not become effective earlier than 90 days after the end of the session at which the Act is passed."

An initiative proposing a statutory enactment may be brought by filing a petition signed by a number of qualified voters equal to at least six percent of the total number of votes cast for all candidates for governor at the last preceding election at which a governor was elected to a four-year term.

Or Const, Art IV, § 1(2)(b). An initiative proposing a constitutional amendment may be initiated by filing a petition signed by a number of qualified voters equal to at least eight percent of such votes. Or Const, Art IV, § 1(2)(c). A referendum commenced by petition must be supported by a petition signed by a number of qualified voters equal to at least four percent of such votes.[1] Or Const, Art IV, § 1(3)(b).

█    The Oregon Constitution also identifies the way in which rules respecting the initiative and referendum process are to be created. Article IV, section 1(4)(b), provides:

> "Initiative and referendum measures shall be submitted to the people as provided in this section and by law not inconsistent therewith."

In addition, and after referring to "[t]he initiative and referendum powers reserved to the people by subsections (2) and (3) of this section," Article IV, section 1(5), provides, in part:

> "The manner of exercising those powers shall be provided by general laws."

That is to say, the constitution empowers the legislature with the authority and responsibility for fleshing out the process.

Acting pursuant to the authority granted in the foregoing provisions, the legislature has enacted a number of statutes that govern, among other things, the collection and counting of voter signatures on initiative and referendum petitions. Several of those statutes are designed to assist in the enforcement of Article IV, section 1b, of the Oregon Constitution, which the people added to the Oregon Constitution by initiative in 2002, and which provides:

> "It shall be unlawful to pay or receive money or other thing of value based on the number of signatures obtained on an initiative or referendum petition. Nothing herein prohibits payment for signature gathering which is not based, either directly or indirectly, on the number of signatures obtained."

---

[1] A referendum also may be ordered by the Legislature Assembly, in which case no requirement for signatures of qualified voters applies. Or Const, Art IV, § 1(3)(c).

In addition, the Secretary of State (who is charged with the responsibility of overseeing the initiative and referendum process) has promulgated an extensive set of rules relating to signature gathering, signature counting, and other parts of the process. OAR ch 165, div 14.

Under the pertinent statutes and rules, the Secretary of State currently cannot count any signature on an initiative or referendum petition sheet (including the signature of a person who is, in fact, a "qualified voter," as that term is used in Article IV, section 1, of the Oregon Constitution) if the petition sheet on which the signature appears suffers from any of the following defects:

(1) The sheet is not verified by the person who circulated it (ORS 250.042, OAR 165-014-0030(3)(c), OAR 165-014-0270);

(2) The sheet was circulated for collection of signatures by a paid circulator who was not registered as such with the Secretary of State (ORS 250.048);

(3) The sheet was circulated during a period of time in which the right to circulate it was suspended for failure of a chief petitioner to provide certain statutorily required "accounts" (ORS 260.262(6)(b));

(4) The petition being circulated is not the same as the version approved by the Secretary of State for circulation (OAR 165-014-0030(3)(a));

(5) The sheets do not comply with the requirements of ORS 260.567 (prohibiting circulators from filling in information for petition signers) (OAR 165-014-0030(3)(c), OAR 165-014-0275(2)); or

(6) The sheet was circulated by a paid circulator who is unable to produce an identification and registration badge issued by the Secretary of State (OAR 165-014-0280(5)(c)).[2]

---

[2] The foregoing list is not exhaustive, and we make no attempt to itemize the additional provisions relating to the Secretary of State's authority over circulation of initiative petition signature sheets found in HB 2005 (2009), which the legislature enacted at its last session. Or Laws 2009, ch 533.

The foregoing statutes and rules are not the only ones relating to qualifying a proposed initiative or referendum for the ballot. Once a number of signatures has been gathered, the proposed initiative or referendum may be placed on the ballot if a sufficiently high percentage of them is valid. Before that placement, however, it is the duty of the Secretary of State to eliminate signatures and reject signature sheets that fail to meet statutory or rule requirements. When that process is completed, the Secretary then determines whether there remain sufficient signatures to place the measure on the ballot. That action by the Secretary of State presently does not involve counting each signature individually; instead, the Secretary uses a scientific sampling method. *See* ORS 250.105(2); OAR 165-014-0030(5) - (16) (stating rules for statistical sampling).

Although some of the effects of Initiative Petition 43 (2010), should it be enacted by the people, are not clear, it is clear that the proposed measure is intended to alter the signature gathering and sampling processes that we have described. That conclusion is suggested by the phrase, "in order to ensure the integrity of public officials in reviewing signatures on petitions," in the first paragraph of the proposed measure. And it follows ineluctably from the statement in the proposed measure that provides:

> "Every registered voter who has signed an initiative or referendum petition * * * is guaranteed the right to have his or her signature counted for purposes of determining whether the initiative or referendum petition has obtained enough signatures to qualify for submission to the voters. No statute or rule may restrict this right."

To offer but one example, under present law, no signature on a particular signature sheet may be considered if the person who circulated the sheet does not verify it in the manner provided by law. ORS 250.042; OAR 165-014-0030(3)(b); OAR 165-014-0270. The proposed measure would overturn that restriction by granting every registered voter who has signed such a sheet a constitutional right to have his or her signature "counted" for the purpose stated in the proposed measure. With that understanding respecting the necessary scope of the proposed measure in mind, we turn again to the

Attorney General's certified ballot title and to petitioner's challenges to that title.

Every ballot title must contain a "caption of not more than 15 words that reasonably identifies the subject matter" of the measure. ORS 250.035(2)(a). Thus, the Attorney General's caption for Initiative Petition 43 (2010) must "substantially comply" with that standard. *See* ORS 250.085(5) (establishing that standard of judicial review of ballot titles). For the convenience of the reader, we repeat the Attorney General's caption here:

**"Amends Constitution: Guarantees registered voter right to have signature counted in determining initiative/referendum qualification for ballot"**

This court identifies the true "subject matter" of a proposed measure for purposes of ORS 250.035(2)(a) by examining the wording of the measure in light of the existing statutory and constitutional context in which the measure, if adopted, would be placed. *See, e.g., Novick / Bosak v. Myers*, 333 Or 18, 24, 36 P3d 464 (2001) (to that effect). Petitioner asserts that, in this case, the Attorney General, instead of independently attempting to identify the subject matter of the proposed measure, has chosen simply to repeat the words of the proposed measure in the caption. That choice, petitioner insists, obscures the measure's actual subject. That subject, petitioner states, is "preventing enforcement of anti-circulator fraud laws."

Although we decline to approve petitioner's particular description of the subject of the proposed measure, we agree with his assertion that the present caption does not capture the true subject matter of Initiative Petition 43 (2010). As we have explained, the subject of the proposed measure is perhaps best identified by noting the connection between two separate parts of the proposed measure: The second clause of the measure's introductory sentence states that the proposed measure is to be added to Article IV, section 4, of the Oregon Constitution, "in order to ensure the integrity of public officials in reviewing signatures on petitions." The *way* in which that integrity is to be "ensured" is then found in the proposed measure's statement that "no

statute or rule" may restrict the "right" of a qualified voter to have the voter's signature "counted." From those two provisions, it becomes clear that the subject of the measure is the removal of impediments to that counting, whether those impediments be statutory or rule-based. And that necessarily means that some of the processes by which signatures presently are vetted—processes that can prevent the counting of certain individual signatures—are to be set aside and that the legislature is forbidden to enact substitutes for them. The Attorney General's caption fails to identify this subject, which is at the heart of the proposed measure. The Attorney General's certified caption, therefore, does not substantially comply with the requirements of ORS 250.035(2)(a). The ballot title therefore must be referred to the Attorney General for modification. ORS 250.085(8).[3]

We note at the same time that it also is true, as petitioner argues, that the Attorney General's caption suffers from another defect. Petitioner argues that the Attorney General's use in the caption of a phrase like "right to have signature counted" unnecessarily introduces a "loaded term" into the caption, one that is designed to create the impression that certain classes of signatures arbitrarily are given no weight in the initiative and referendum process. The phrase is found in the measure itself. As petitioner points out, however, this court previously has been critical of using wording drawn from a proposed measure in a caption if that wording " 'is not neutral and might mislead voters into supporting the proposal without understanding its true effects.' " *Mabon v. Myers*, 332 Or 633, 638 n 2, 33 P3d 988 (2001), *quoting Earls v. Myers*, 330 Or 171, 176, 999 P2d 1134 (2000). We agree with petitioner that that same concern is pertinent here. On referral, the Attorney General should select other words to identify the proposed measure's subject.

■ ORS 250.035(2)(b) requires that a ballot title contain "a simple and understandable statement of not more than 25 words that describes the result" if the measure is

---

[3] The Attorney General argues that petitioner is confusing an alleged *effect* of the proposed measure with the measure's *subject matter*, while the focus of the caption is supposed to be on the latter. *See, e.g., Kain v. Myers*, 335 Or 228, 233, 64 P3d 1129 (2003) (focusing on that distinction). We think, however, that the two concepts are the same for the purposes of this narrowly focused measure.

approved. We again set out the Attorney General's "yes" vote result statement for the proposed measure:

> **"Result of 'Yes' Vote:** 'Yes' vote requires every registered voter's signature on initiative/referendum petitions to be counted in determining if sufficient number were collected to qualify measure for ballot."

Petitioner argues that the Attorney General's "yes" vote result statement suffers from the same defects as did the caption. We agree. The "yes" vote result statement must be modified.

ORS 250.035(2)(c) requires that a ballot title contain a "simple and understandable statement of not more than 25 words that describes the result" if the measure is rejected. The Attorney General's "no" vote result statement provides:

> **"Result of 'No' Vote:** 'No' vote retains laws regarding acceptance, verification of signatures on initiative/referendum petitions, including use of statistical sampling in determining if sufficient number were collected."

Petitioner objects to this part of the Attorney General's certified ballot title for Initiative Petition 43 (2010) on different grounds than those asserted concerning other parts of the ballot title. He argues that the Attorney General's focus on the "statistical sampling" practice used by the Secretary of State in counting petition signatures is too narrow and selective in at least two ways. First, it ignores a host of other ways in which the Secretary of State presently tests the validity of signatures on initiative petitions, including determining whether the petition circulator was authorized to circulate petitions, whether the circulator followed the correct procedures, and the like. Second, it assumes that the proposed measure, if adopted, necessarily would deny the Secretary of State the right to use statistical sampling methods to validate (and count) signatures. Again, we agree. On referral, the Attorney General should, consistent with the word number limitation applicable to this part of the ballot title, avoid singling out and concentrating on any particular way by which the Secretary of State limits the eligibility of signatures to be counted, and avoid making debatable assumptions respecting the effect of passage of the proposed measure.

■       The Attorney General certified the following
summary:

> "**Summary:**   Amends constitution. Initiative/referen-
> dum petitions qualify for submission to voters only when
> they are signed by sufficient number of qualified voters;
> exact number depends on type of measure. Currently, laws
> and administrative rules establish requirements for signa-
> ture collection and verification to prevent fraud, forgery, or
> improper signature gathering. Instead of counting each sig-
> nature submitted, elections officials use statistical sam-
> pling of signatures from valid petition forms to determine if
> sufficient number of qualified voter signatures were col-
> lected. Measure guarantees registered voters right to have
> their signatures counted in determining if sufficient num-
> ber of signatures were submitted to qualify measure
> for ballot; prohibits any statute or administrative rule
> from restricting this right; may invalidate existing consti-
> tutional provisions, statutes, administrative rules regard-
> ing initiative/referendum petition requirements. Other
> provisions."

Under ORS 250.035(2)(d), a ballot title must contain
a "concise and impartial statement of not more than
125 words summarizing the state measure and its major
effect." The function of that summary is to provide voters
with enough information to understand what will happen if
the measure is approved, *i.e.*, to advise voters of the "breadth"
of a measure's impact. *See Fred Meyer, Inc. v. Roberts*, 308 Or
169, 175, 777 P2d 406 (1989) (stating that principle). Peti-
tioner attacks the summary on several grounds. Petitioner
argues that the summary suffers from some of the same
defects from which the caption and "yes" vote result state-
ment suffer. We agree that those same defects are present in
the summary. We hold that the Attorney General's summary
does not comply substantially with the statutory standards
established for such summaries.[4]

Based on the foregoing analysis of the issues pre-
sented by the present ballot title challenge, we hold that the
caption, the "yes" vote result statement, the "no" vote result
statement, and the summary certified by the Attorney

---

[4] We reject, without discussion, an alternative argument that petitioner offers
in connection with the summary.

General in his ballot title for Initiative Petition 43 (2010) do not substantially comply with statutory requirements. The matter is referred to the Attorney General for modification of the certified ballot title.

The ballot title is referred to the Attorney General for modification.