On petitioner's objections to modified ballot title filed March 29, considered and under advisement March 31, second modified ballot title certified to Secretary of State April 29, reconsideration denied June 11, 2010

Jerry CARUTHERS,
*Petitioner,*

*v.*

John R. KROGER,
Attorney General,
State of Oregon,
*Respondent.*

(SC S057678)

230 P3d 923

See also, 347 Or 660, 227 P3d 723; 348 Or 63, 228 P3d 549.

Thomas K. Doyle, Bennett, Hartman, Morris & Kaplan, LLP, Portland, filed the objections and the reply for petitioner.

Douglas F. Zier, Senior Assistant Attorney General, Salem, filed a response to petitioner's objections for respondent.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Linder, Justices.*

* Walters, J., did not participate in the consideration or decision of this case.

PER CURIAM

Durham, J., dissented and filed an opinion, in which Gillette, J., joined.

**PER CURIAM**

This ballot title review proceeding involving Initiative Petition 43 (2010) is before the court for a third time. *See Caruthers v. Kroger*, 347 Or 660, 227 P3d 723 (2010) (certified ballot title referred to Attorney General for modification); *Caruthers v. Kroger*, 348 Or 63, 228 P3d 549 (2010) (Attorney General's modified ballot title referred to Attorney General for further modification). In response, on March 23, 2010, the Attorney General certified a second modified ballot title, which we set out in full:

### "Amends Constitution: Prohibits current and future elections laws from disqualifying registered voters' signatures on initiative/ referendum petitions

"**Result of 'Yes' Vote:** 'Yes' vote sets aside many existing controls over initiative/referendum signature collection and verification process and prohibits the legislature from enacting statutes for those controls.

"**Result of 'No' Vote:** 'No' vote retains existing laws and regulations that control the initiative and referendum signature collection and verification process for determining if measure qualifies for ballot.

"**Summary:** Amends constitution. Initiative and referendum petitions qualify for ballot only when they are signed by a sufficient number of qualified registered voters. Currently, constitutional provisions, statutes, and administrative rules establish requirements for signature collection, verification, and counting to prevent fraud, forgery, or improper signature gathering; for example, disqualifying entire petition signature sheet if circulator's signature is undated or date is crossed out. Measure prohibits the disqualification of any individual registered voter's signature on an initiative/referendum petition, even when signature on the petition was obtained in violation of current elections laws. Prohibits any future statute or administrative rule from disqualifying registered voters' signatures 'for purposes of determining whether the initiative or referendum petition has obtained enough signatures to qualify for submission to voters.' Other provisions."

Petitioner has filed objections to the caption and the summary in the second modified ballot title. Petitioner

argues that, contrary to this court's prior directions, the caption still focuses incorrectly on election laws that disqualify voters' signatures on initiative and referendum petitions. He also contends that the summary is insufficient. He complains that, by using only a minor technical deficiency as an example of an election law that the proposed measure would invalidate, the summary misleads voters into believing that the subject matter of the measure is the protection of voters' signatures against invalidation due to similar minor technicalities.

The court has reviewed the second modified ballot title and petitioner's objections, and has concluded that petitioner's objections do not demonstrate that the second modified ballot title lacks substantial compliance with the requirements of ORS 250.035. ORS 250.085(8) and (9). Therefore, the court will certify the second modified ballot title, quoted above, to the Secretary of State.

The second modified ballot title is certified to the Secretary of State.

**DURHAM, J.,** dissenting.

Petitioner has filed objections to the caption and summary in the Attorney General's second modified ballot title. In my view, the objection to the second modified caption is well taken. For the reasons stated below, I would again refer the ballot title to the Attorney General for modification of the caption. Accordingly, I dissent from the majority's decision to certify the second modified ballot title to the Secretary of State.

Initiative Petition 43 (2010), if adopted by the voters, would amend the Oregon Constitution by curtailing the authority of the Oregon legislature to establish procedures for acceptance and verification of voter signature sheets filed in support of initiative and referendum petitions. The proposed measure would accomplish that result by granting to registered voters a constitutional right to have their signatures on petitions "counted" toward applicable total signature requirements.[1] By creating that sort of constitutional

---

[1] Initiative Petition 43 (2010) provides:

"In order to respect voter participation in the initiative and referendum process, and in order to ensure the integrity of public officials in reviewing

right, Initiative Petition 43 (2010) would invalidate a host of statutory requirements concerning the circulation, verification, and filing of petition signature sheets—requirements that the legislature adopted to protect petition signers and voters from fraud, forgery, and other abuses by petition circulators. Petitioner contends that, despite three attempts, the Attorney General still has failed to compose a ballot title caption that accurately states the subject matter of the proposed measure. ORS 250.035(2)(a) (15-word ballot title caption must "reasonably identif[y] the subject matter of the state measure").

The context for the court's consideration of petitioner's argument is a familiar one. In *Yugler v. Myers*, 344 Or 552, 555, 185 P3d 1110 (2008), this court stated:

"The caption serves as the 'cornerstone for the other portions of the ballot title' and therefore must identify the proposed measure's true subject matter 'accurately and in terms that will not confuse or mislead potential petition signers and voters.' *Green v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366 (1995)."

This court has insisted that a ballot title caption describe a proposed measure's subject matter accurately and without confusion, because of the central importance of the caption to the decision-making process of petition signers and voters.

"The caption, which is the first information that most potential petition signers and voters will see, is pivotal. It must 'inform potential petition signers and voters of the sweep of the measure.' *Terhune v. Myers*, 342 Or 475, 479, 154 P3d 1284 (2007). A caption should not 'understate or overstate the scope of the legal changes that the proposed measure would enact.' *Kain / Waller v. Myers*, 337 Or 36, 40, 93 P3d 62 (2004). If a proposed measure has more than one

---

signatures on petitions, the People add the following provision to Section 1, Article IV of their Constitution:

"Every registered voter who has signed an initiative or referendum petition that has been filed as provided in section (1)(2)(e) or section (1)(3)(b) of this Article is guaranteed the right to have his or her signature counted for purposes of determining whether the initiative or referendum petition has obtained enough signatures to qualify for submission to the voters. No statute or rule may restrict this right."

subject, each should be indentified in the caption if it is possible to do so within the 15-word limit. *Novick / Sager v. Myers*, 329 Or 11, 16, 986 P2d 1 (1999)."

*Frazzini v. Myers*, 344 Or 648, 654, 189 P3d 1277 (2008).

The review principles mentioned in those quoted passages of course apply in all ballot title review proceedings. The court, however, has been particularly vigilant in scrutinizing ballot title captions that allude to the creation of new legal rights or the modification of existing legal duties. The court's vigilance is especially justified when, as here, the proposed measure's text not only enacts a new legal "right," but also states, redundantly, that the measure *guarantees* the new right to every registered voter and that no other statute or rule may restrict the guaranteed new right. One case in particular illustrates that point. In *Yugler*, the proposed measure would have created a statutory requirement that judges deliver an instruction to juries informing them that each juror had the "right" and "duty" to judge both the facts and the law applicable to every case and to disregard a judge's instructions if the juror believed that those instructions would result in "an unjust verdict or judgment." 344 Or at 554 (quoting IP 17). The Attorney General seized on the words of the proposed measure in certifying the following ballot title caption:

> "Requires Instructing Jury of Right/Duty to Disregard Law if Verdict Against Defendant is 'Unjust' "

*Id.* The Attorney General defended the use of the " 'right/duty' " characterization in the caption in part because it accurately reflected the words used in the proposed measure. This court disagreed, because, in that context, the terms " 'right/duty' " implied that jurors had an existing right or duty to disregard applicable law in reaching a verdict. According to the court, that inference was incorrect and, moreover, it was debatable whether the proposed measure would create such a right or duty. *Id.* at 556.

This court has declined to approve ballot title captions that repeat the "right," "duty," or similar jargon from a proposed measure's text, but fail to describe accurately the true scope of the legal changes that the measure would

create. *See Frazzini*, 344 Or at 655 (certified caption, "Retroactively Repeals Law Granting State Privileges, Immunities, Rights, Benefits, Responsibilities of Marriage to Domestic Partners," was insufficient because it failed to accurately portray the separate subject of banning enactment of any law granting marriage benefits to same-sex domestic partners); *Hunnicutt/Stacey v. Myers*, 343 Or 387, 392, 171 P3d 349 (2007) (caption, "Limits Land Use Goals, Need for Consistency with Goals, to 'Areas of Critical State Concern' " was insufficient because true legal effect was not described "limit," but rather nullification of requirement that local land use planning laws must comply with state land use planning law); *Sizemore/Terhune v. Myers*, 342 Or 578, 588, 157 P3d 188 (2007) (caption understated scope of measure's proposed changes to Oregon law due to failure to disclose that measure (1) created "extensive enforcement provisions" regarding union security agreements, and (2) actually entitled employees to receive mandated representation services without sharing in the cost of the services); *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 174, 777 P2d 406 (1989) (in caption, "Protects Petition Activity at Malls and Premises Open to Public," term "protects" was misleading, because it implied incorrectly that citizens had an existing legal right to gather petition signatures on all premises open to the public). Each of those cases was an application of a principle that this court has long observed in reviewing ballot titles:

> "A ballot title should not misstate existing law, even by implication, and thereby create a spurious argument to support the measure's passage."

*Dale v. Kulongoski*, 321 Or 108, 113, 894 P2d 462 (1995) (citations omitted).

The justification for the court's insistence on looking behind the legal jargon in a proposed measure's text is readily apparent. A measure's text states the change or changes in law that the author hopes to enact. However, the measure's text is not meant to fulfill the task of a ballot title caption, *i.e.*, to "reasonably identif[y] the subject matter of the state measure." ORS 250.035(2)(a). Any author of an initiative petition, in drafting a proposed measure, may use any terms he or she may desire, including politically attractive

terms, to state the legal changes that the measure proposes. Similarly, an author may avoid referring in the text to politically unattractive costs or consequences of the approval of the proposed measure. However, as the cases cited in the previous paragraph confirm, the ballot title must identify accurately and clearly the proposed measure's subject matter without deference to any distorted or politically charged terminology that the measure's author may have selected, perhaps to boost the measure's appeal to voters.

The proposed measure would create a "right" in every registered voter to have his or her signature counted. But, by enacting such a "right" as a part of the Oregon Constitution, the measure also would invalidate a number of statutory controls that the legislature has created to protect voters from fraudulent practices by petition circulators. In net terms, the proposed measure would circumscribe the heretofore unquestioned authority of the legislature to regulate the procedures that govern the circulation of signature sheets and the verification of signatures on petitions. The question before the court is whether the latter consequence is part of the measure's subject matter and, if so, whether the Attorney General has identified that subject matter accurately.

The caption that the Attorney General first certified for Initiative Petition 43 (2010) provided:

> " 'Amends Constitution: Guarantees registered voter right to have signature counted in determining initiative/referendum qualification for ballot.' "

In *Caruthers v. Kroger*, 347 Or 660, 227 P3d 723 (2010), this court, after reviewing the relevant provisions of the constitution concerning the people's power of initiative and referendum, concluded that "the constitution empowers the legislature with the authority and responsibility of fleshing out the process." *Id.* at 664. The court then reviewed the array of statutes that the legislature had enacted, and the rules of the Secretary of State that it had authorized, to regulate the gathering and counting of signatures on initiative petitions. The court concluded: "[I]t is clear that proposed measure is intended to alter the signature gathering and sampling processes that we have described." *Id.* at 666. Referring to the

measure's creation of a right to have a voter's signature "counted," the court identified the measure's subject matter in these terms:

"From those two provisions, it becomes clear that the subject of the measure is the removal of impediments to that counting, whether those impediments be statutory or rule-based. And that necessarily means that some of the processes by which signatures presently are vetted—processes that can prevent the counting of certain individual signatures—are to be set aside and that the legislature is forbidden to enact substitutes for them. The Attorney General's caption fails to identify this subject, which is at the heart of the proposed measure. The Attorney General's certified caption, therefore, does not substantially comply with the requirements of ORS 250.035(2)(a). The ballot title therefore must be referred to the Attorney General for modification."

*Id.* at 668 (footnote and citation omitted). The court also expressly agreed with petitioner's contention that the Attorney General's use in the caption of a phrase such as "right to have signature counted," even though taken from the measure's text, introduced a loaded term into the caption that should be avoided on referral. *Id.* The court referred the ballot title to the Attorney General for modification.

On referral, the Attorney General certified a modified ballot title with the following caption:

"Amends Constitution: Prohibits laws restricting count of registered voters' signatures to determine initiative/referendum qualification for ballot"

Petitioner filed objections to that modified ballot title, including the caption, arguing that the new caption failed to focus, as this court had required, on the statutes and rules that the measure would invalidate. This court agreed, stating:

"Petitioner is correct. This court did state in its earlier opinion that the proposed measure would remove some (not all) of the impediments to counting signatures, but specifically noted that the manner in which that would be accomplished was that

" 'some of the processes by which signatures presently are vetted—processes that can prevent the counting of

certain individual signatures—are to be set aside and * * * the legislature is forbidden to enact substitutes for them. The Attorney General's caption fails to identify this subject, which is at the heart of the measure.'

"*Caruthers*, 347 Or at 668. As further clarification, the opinion included examples of statutes and rules that would be affected by enactment of the proposed measure. *Id.* at 665. Most such statutes and rules focus on practices and procedures that the legislature and the Secretary of State have considered desirable to ensure the legitimacy of the signature-gathering process and to regulate the activities of those who gather the signatures; *few (if any) have as their principal focus or purpose the disqualification of signatures.* Thus, as our previous opinion indicated (and as petitioner now argues), *the subject of the proposed measure was the elimination of many existing controls on the present signature collection and verification process, together with a prohibition on creating substitutes for those controls.* The Attorney General's caption still does not capture that subject. It must."

348 Or at 68 (omission in original; emphasis added). The court referred the ballot title to the Attorney General for modification.

It is worth noting at this point that this court's two opinions created a clear message about the error that had infected the Attorney General's two captions. In response to that message, the Attorney General certified a second modified ballot title that included the following caption:

"Amends Constitution: Prohibits current and future elections laws from disqualifying registered voters' signatures on initiative/referendum petitions"

Petitioner has filed an objection to that caption. Petitioner notes that the new "yes" vote result statement *does* comply with the court's prior decisions. It states:

"Result of 'Yes' Vote: 'Yes' vote sets aside many existing controls over initiative/referendum signature collection and verification process and prohibits the legislature from enacting substitutes for those controls."

But the new caption bears little relationship to the "yes" vote result statement. According to petitioner, the caption again

avoids this court's clear statements about what the caption must contain to pass muster.

In my view, petitioner is correct. The statement that the measure would "prohibit current and future elections laws from disqualifying registered voters' signatures" wrongly identifies the measure's focus as "laws" that interfere with the *counting of voters' signatures*: this court already has rejected that erroneous focus in two previous captions. Despite this court's statement in its second opinion that "few (if any) [of the pertinent statutes and rules] have as their principal focus or purpose the disqualification of signatures[,]" *id.*, the Attorney General's new caption again focuses on the prohibition of "elections laws * * * disqualifying registered voters' signatures * * *." That phrasing reflects an overreliance by the Attorney General on the creation by the proposed measure's text of a right to have a signature counted. The new caption fails to identify, as our prior opinions required, the proposed measure's true subject matter: "the elimination of many existing controls on the present signature collection and verification process, together with a prohibition on creating substitutes for those controls." *Id.*

The importance of requiring an accurate ballot title caption in his matter cannot be gainsaid. The proposed measure would amend the Oregon Constitution, and thus would remove the prospect of any later adjustment of the proposed measure's operation by the Oregon legislature.

Because the second modified ballot title caption merely recycles the same substantive information that this court already has rejected twice as insufficient, I would refer the second modified ballot title to the Attorney General for modification.

Gillette, J., joins in this dissenting opinion.