On petition to review ballot title filed March 11, considered and under advisement April 13, ballot title referred to Attorney General for modification May 5, ballot title certified May 23, 2011 (350 Or 409)

Gail RASMUSSEN
and Bethanne Darby,
*Petitioners,*

*v.*

John R. KROGER,
Attorney General,
State of Oregon,
*Respondent.*

(SC S059264)

253 P3d 1037

Thomas K. Doyle, Bennett, Hartman, Morris & Kaplan LLP, Portland, filed the petition and the reply memorandum for petitioners.

Douglas F. Zier, Senior Assistant Attorney General, Salem, filed the answering memorandum for respondent. With him on the memorandum were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

DURHAM, J.

.

## DURHAM, J.

Petitioners seek review of the certified ballot title for Initiative Petition 12 (2012). The proposed measure, if approved by the voters, would amend the state constitution to require elections officials to count every qualified voter's signature on an initiative or referendum petition. Additionally, it would prevent the application of laws intended to prevent forgery or fraud in the circulation of petitions to block such signatures from being counted toward the required number of signatures on a petition.[1]

Petitioners are Oregon electors who submitted comments regarding the Attorney General's draft ballot title. For that reason, petitioners are entitled to seek review of the certified ballot title. ORS 250.085(2).

The Attorney General certified the following ballot title for Initiative Petition 12:

**"Amends Constitution:   Prohibits election laws from excluding qualified voters' signatures on initiative/referendum petitions; creates enforceable right**

**"Result of 'Yes' Vote:**   'Yes' vote prevents enforcement or enactment of many controls on initiative/referendum

---

[1] Initiative Petition 12 (2012) provides:

"The people add the following section to Article IV of the Constitution:

"(1) Each qualified voter who signs an initiative or referendum petition shall have an individual, enforceable right to have his or her signature counted on the petition, provided the petition has been filed with the election official assigned to process such petition.

"(2) Laws may be enacted to prevent forgery or fraud in the circulation of a petition. However, such laws shall not be applied in any manner so as to prevent a qualified voter's signature from being included in the determination whether the petition contains the required number of signatures of qualified voters.

"(3) The rights guaranteed by this amendment may be enforced by any qualified voter who signed the initiative or referendum petition, individually or on behalf of any other qualified voter who signed the initiative or referendum petition, by commencing an action in circuit court in the same manner as the commencement of a civil action.

"(4) For purposes of this amendment, 'counted' means to include the qualified voter's signature in the appropriate elections officer's determination whether the petition contains the required number of signatures of qualified voters."

signature collection and verification. Allows private lawsuits to compel counting qualified voters' signatures.

"**Result of 'No' Vote:** 'No' vote retains existing laws and regulations that control the initiative and referendum signature collection and verification process for determining if measure qualifies for ballot.

"**Summary:** Amends constitution. Initiative and referendum petitions qualify for the ballot based on the number of qualified registered voters' signatures. Currently, constitutional provisions, statutes, and administrative rules regulate signature collection, verification, and counting to prevent fraud, forgery, and improper signature-gathering. Measure prohibits excluding from the count a qualified voter's signature on an initiative/referendum petition, even if the signature was obtained in violation of election laws. Measure does not bar enactment of future laws to prevent forgery or fraud in petition circulation, but prohibits such laws from resulting in the exclusion of a qualified voter's signature. Provides any qualified voter who signed petition with right to sue, on behalf of self or any other qualified signing voter, to require counting qualified voters' signatures. Other provisions."

(Boldface in original.)

Petitioners challenge each part of the certified ballot title. For the reasons that follow, we agree in part with petitioners' arguments and refer the ballot title to the Attorney General for modification.

This court reviews the certified ballot title to determine whether it substantially complies with the requirements of ORS 250.035. ORS 250.085(5). Before addressing those requirements, we summarize the legal context in which Initiative Petition 12, if approved, would apply. *See Caruthers v. Kroger*, 347 Or 660, 663, 227 P3d 723 (2010) (*Caruthers I*) (following that approach in reviewing the ballot title for a similar measure, Initiative Petition 43 (2010)).[2]

---

[2] After referral of the ballot title in *Caruthers I*, the Attorney General certified a modified ballot title. This court reviewed that modified ballot title and referred it for further modification. *Caruthers v. Kroger*, 348 Or 63, 228 P3d 549 (2010). The Attorney General certified a second modified ballot title. Following review, this court certified that ballot title. *Caruthers v. Kroger*, 348 Or 269, 230 P3d 923 (2010).

The Oregon Constitution reserves to the people the powers of initiative and referendum. Or Const, Art IV, § 1(2)(a) (describing power of initiative); Art IV, § 1(3)(a) (describing power of referendum). The people's exercise of those powers depends, in part, on the submission of a petition supported by the required number of signatures of qualified voters. The enactment of a statute by initiative requires qualified signatures equal to six percent of the total votes cast for all candidates for Governor at the last preceding election at which a Governor was elected to a four-year term. Or Const, Art IV, § 1(2)(b). For an initiative amendment to the constitution, the number of required qualified signatures is eight percent of such votes. Or Const, Art IV, § 1(2)(c). For a referendum, the signatures of four percent of such votes must support the petition, Or Const, Art IV, § 1(3)(b), although no signatures are needed for a referendum ordered by the Legislative Assembly. Or Const, Art IV, § 1(3)(c).

The Oregon Constitution forbids petition sponsors to compensate a petition circulator on the basis of the number of signatures that the circulator collects on a petition. Article IV, section 1b, of the Oregon Constitution which the people added to the constitution by initiative in 2002, provides:

"It shall be unlawful to pay or receive money or other thing of value based on the number of signatures obtained on an initiative or referendum petition. Nothing herein prohibits payment for signature gathering which is not based, either directly or indirectly, on the number of signatures obtained."

The Oregon Constitution authorizes the legislature to enact laws providing the manner of exercising the powers of initiative and referendum. Article IV, section 1(5) of the Oregon Constitution provides, in part:

"The manner of exercising those powers shall be provided by general laws[.]"

The legislature, relying on that authorization, has enacted several statutes that control the collection and counting of signatures on initiative and referendum petitions. Additionally, the Secretary of State, acting pursuant to authority delegated to that officer by the legislature,[3] has adopted

---

[3] *See, e.g.*, ORS 250.015 (delegating to the Secretary of State the authority to make rules concerning the form and numbering of signature sheets for initiative

administrative rules that further regulate the collection and counting of such signatures. In *Caruthers I*, this court summarized several of the signature-gathering defects, identified in the pertinent statutes and rules, that require the Secretary of State to refrain from counting the signatures on a petition sheet:

"(1)   The sheet is not verified by the person who circulated it (ORS 250.042, OAR 165-014-0030(3)(c)), OAR 165-014-0270);

"(2)   The sheet was circulated for collection of signatures by a paid circulator who was not registered as such with the Secretary of State (ORS 250.048);

"(3)   The sheet was circulated during a period of time in which the right to circulate it was suspended for failure of a chief petitioner to provide certain statutorily required "accounts" (ORS 260.262(6)(b));

"(4)   The petition being circulated is not the same as the version approved by the Secretary of State for circulation (OAR 165-014-0030(3)(a));

"(5)   The sheets do not comply with the requirements of ORS 260.567 (prohibiting circulators from filling in information for petition signers) (OAR 165-014-0030(3)(c)), OAR 165-014-0275(2)); or

"(6)   The sheet was circulated by a paid circulator who is unable to produce an identification and registration badge issued by the Secretary of State (OAR 165-014-0280(5)(c)).[2]

_____

[2] The foregoing list is not exhaustive, and we make no attempt to itemize the additional provisions relating to the Secretary of State's authority over circulation of initiative petition signature sheets found in HB 2005 (2009), which

and referendum petitions); ORS 250.045(3) (providing that the secretary shall, "by rule * * * establish procedures for verifying whether a prospective petition for a state measure to be initiated contains the required number of signatures of electors"); ORS 250.048 (delegating to the secretary the authority to make rules concerning the registration and training of paid petition circulators); ORS 250.105(1)(d) (providing that the secretary "shall adopt rules establishing procedures for verifying signatures on an initiative or referendum petition"); ORS 250.105(5) (providing that the secretary shall, "by rule * * * designate a statistical sampling technique to verify whether a petition contains the required number of signatures of electors").

the legislature enacted at its last session. Or Laws 2009, ch 533."

347 Or at 665. In addition, the Secretary of State may not "count" the signatures on a petition signature sheet if the circulator fails to verify the sheet as required by law. ORS 250.042; OAR 165-014-0030(3)(b); OAR 165-014-0270.

Initiative Petition 12 would nullify many of the current legal procedures and requirements, summarized above, that provide that signatures gathered in violation of those requirements shall not be counted. It would do so by creating a constitutional right in favor of every qualified voter who signs a petition for an initiative or referendum. That new right would entitle every such voter to have his or her signature "counted" on the petition, even if the steps followed in collecting and submitting the signatures and petition signature sheets violated laws enacted to prevent forgery or fraud in the circulation of a petition. In addition, the proposed measure would authorize any qualified voter who signed the petition in question to enforce the new constitutional right, on behalf of that voter or any other voter who signed the petition, by commencing an action in circuit court.

With that legal context in mind, we turn now to petitioners' challenges to the certified ballot title. ORS 250.035(2)(a) requires a ballot title caption to contain a "caption of not more than 15 words that reasonably identifies the subject matter of the state measure." Petitioners contend that the phrase "creates enforceable right" in the caption is politically charged, is not neutral, and could mislead voters into supporting the proposed measure. *See Dirks v. Myers,* 329 Or 608, 616, 993 P2d 808 (2000) (explaining that court has resisted attempts to incorporate into ballot title caption terms or phrases that "tend more to promote or defeat passage of the measure than to describe its substance accurately").

The Attorney General responds that the word limit for a caption precluded a more detailed description of the enforcement remedy. Additionally, the Attorney General acknowledges that this court in *Caruthers I* required modification of the phrase "right to have signature counted" in a caption for a similar proposed measure, but argues that the

phrase challenged here, "creates enforceable right," does not create the same impression and is not impermissibly loaded.

In *Caruthers I*, this court stated:

> "We note at the same time that it also is true, as petitioner argues, that the Attorney General's caption suffers from another defect. Petitioner argues that the Attorney General's use in the caption of a phrase like 'right to have signature counted' unnecessarily introduces a 'loaded term' into the caption, one that is designed to create the impression that certain classes of signatures arbitrarily are given no weight in the initiative and referendum process. The phrase is found in the measure itself. As petitioner points out, however, this court previously has been critical of using wording drawn from a proposed measure in a caption if that wording ' "is not neutral and might mislead voters into supporting the proposal without understanding its true effects." ' *Mabon v. Myers*, 332 Or 633, 638 n 2, 33 P3d 988 (2001), quoting *Earls v. Myers*, 330 Or 171, 176, 999 P2d 1134 (2000). We agree with petitioner that that same concern is pertinent here. On referral, the Attorney General should select other words to identify the proposed measure's subject."

347 Or at 668.

In our view, the danger identified in *Caruthers I* is present in the caption under review, even though the wording is not identical. The phrase "creates enforceable right" conveys to the voter that the proposed measure establishes a new right, thus identifying a positive result or benefit for voters, but fails to accurately describe the scope of the right that the measure could create. The caption must state accurately the scope of the legal change that the new right would create. A failure in that regard impermissibly produces an incomplete picture of the new right that the measure would enact, thus conveying to voters a potentially misleading argument supporting the measure's passage. *See Dale v. Kulongoski*, 321 Or 108, 113, 894 P2d 462 (1995) (applying principle).

We also are not persuaded that the applicable word limit compels the use of the phrase "creates enforceable right" in the caption. The Attorney General may solve the problem noted by modifying the remainder of the caption to describe adequately the right that the measure would create.

*See Kain v. Myers*, 336 Or 116, 121, 79 P2d 864 (2003) (discussing that principle). The word limit does not justify using a potentially misleading description of that right in the caption.

The "yes" vote result statement in a ballot title must contain a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." ORS 250.035(2)(b). Petitioners argue that the certified "yes" vote result statement is inaccurate because the proposed measure does not "prevent[ ] * * *enactment" of controls of any kind.

The Attorney General does not quarrel with petitioners' contention on the merits.[4] Instead, the Attorney General argues that petitioners' objection was not made to the Secretary of State and, thus, this court should not consider it.

ORS 250.085(6) states the controlling rule:

"When reviewing a title certified by the Attorney General, the Supreme Court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State unless the court determines that the argument concerns language added to or removed from the draft title after expiration of the comment period provided in ORS 250.067."

The Attorney General's draft ballot title for the proposed measure included the following "yes" vote result statement:

"**Result of 'Yes' Vote:** 'Yes' vote sets aside many existing controls on initiative/referendum signature collection and verification process; prohibits enactment of substitutes that would disqualify voters' signatures."

---

[4] A careful reading of the text of Initiative Petition 12 discloses that the proposed measure does not prevent "enactment" of any law or rule, a point that the certified summary makes explicitly. Because our decision refers the ballot title to the Attorney General for modification, the Attorney General has authority to remedy that potential inaccuracy in the "yes" vote result statement in a revised ballot title. *See Sizemore / Terhune v. Myers*, 342 Or 578, 591, 157 P3d 188 (2007) (recognizing Attorney General's authority on referral).

The word "enactment" appears in both the draft and certified "yes" vote result statements. Petitioners did not object to that word before the Secretary of State. The Attorney General modified the wording of the draft "yes" vote result statement in producing the certified ballot title. The certified "yes" vote result statement also incorporated the term "enactment," although in a slightly different context. Whereas the draft "yes" vote result statement stated that the proposed measure "prohibits enactment of substitutes that would disqualify qualified voters' signatures[,]" the certified "yes" vote result statement states that a yes vote on the measure "prevents enforcement or enactment of many controls on initiative/referendum signature collection and verification."

Petitioners do not argue that the alteration of the context in which the term "enactment" appears in the certified ballot title constitutes an addition or removal of language, or that their argument "concerns" language added or removed, within the meaning of ORS 250.085(6). Accordingly, in compliance with the legislature's requirement, we shall not consider petitioners' argument.

Petitioners raise other objections to the ballot title. We conclude that the other objections are not well taken and do not require discussion.

We refer the ballot title to the Attorney General for modification. ORS 250.085(8).

The ballot title is referred to the Attorney General for modification.