Filed: January 12, 2012

IN THE SUPREME COURT OF THE STATE OF OREGON

JANN CARSON
and DAVID FIDANQUE,

Petitioners,

v.

JOHN R. KROGER,
Attorney General,
State of Oregon,

Respondent.

_____

ROEY THORPE
and CYNTHIA PAPPAS,

Petitioners,

v.

JOHN R. KROGER,
Attorney General,
State of Oregon,

Respondent.

(SC S059719 (Control), S059724)
(Consolidated by order dated September 21, 2011)

En Banc

On petitions to review ballot title filed September 12, 2011, considered and under advisement on December 21, 2011.

Gregory A. Chaimov, Davis Wright Tremaine LLP, Portland, filed the petition and reply memorandum for petitioners Carson and Fidanque.

Margaret S. Olney, Bennett, Harman, Morris & Kaplan LLP, Portland, filed the petition and reply memorandum for petitioners Thorpe and Pappas.

Judy Lucas, Senior Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the memorandum were John K. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

LANDAU, J.

The ballot title is referred to the Attorney General for modification.

LANDAU, J.

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 22 (2012), arguing that the ballot title does not satisfy the requirements of ORS 250.035(2). We review a certified ballot title to determine whether it substantially complies with those statutory requirements. *See* ORS 250.085(5) (stating standard of review). For the reasons that follow, we refer the ballot title to the Attorney General for modification.

Initiative Petition 22 would amend the Oregon Constitution, creating a new provision, Article I, section 46. That proposed provision, in its entirety, is as follows:

"Section 46. Right to Life

"(1) No person shall be denied the right to life.

"(2) With respect to the right to life guaranteed in this section of the Constitution, the word 'person' applies to all human beings, irrespective of age, race, gender, health, function, or condition of dependency, including their unborn offspring at every stage of biological development, including fertilization.

"(3) The right to life guaranteed in this section of the Constitution does not apply to any person sentenced to the penalty of death for aggravated murder as set forth in section 40 of this Article.

"(4) The Legislative Assembly shall enforce, by appropriate legislation, the provisions of this section."

The Attorney General certified the following ballot title for Initiative Petition 22:

**"Amends Constitution:  Recognizes personal 'right to life' (undefined) that begins at fertilization; prohibits all abortions, certain contraceptives**

"**Result of 'Yes' Vote:**  'Yes' vote amends constitution; recognizes a personal 'right to life' (which is undefined) that begins at fertilization; prohibits abortion, certain contraceptives, embryonic stem cell research.

1

"**Result of 'No' Vote:**  'No' vote retains current constitutional rights, including right to abortion and to use birth control; full legal rights of a person not applicable before birth.

"**Summary:**  Amends Constitution.  Under the United States Constitution, human fertilized eggs, embryos, and fetuses do not have the full legal rights of a person; abortion is permitted before a fetus becomes viable, and afterward if the woman's life or health is endangered; use of contraceptives is not restricted.  Measure recognizes a state constitutional 'right to life' (undefined) of a 'person,' irrespective of age, race, gender, health, 'function' (undefined), or 'condition of dependency' (undefined). Measure accords that right to all pre-birth stages of human development, beginning at fertilization.  Prohibits abortion (without exception for the woman's health or safety), certain birth control methods; embryonic stem cell research; may override statutes allowing withdrawal of life support, 'Oregon Death With Dignity Act.'  Excludes persons sentenced to death penalty.  Other provisions."

(Boldface type in original.)

Petitioners Carson and Fidanque contend that the ballot title is deficient in a number of different respects pertaining to the caption, the "yes" and "no" vote result statements, and the summary.  So also do petitioners Thorpe and Pappas, although in slightly different respects.  We begin with the adequacy of the caption.

All petitioners object to the use of the phrase "right to life" in the caption. Petitioners Carson and Fidanque argue that, because the phrase "right to life" is generally associated with opposition to abortion, it should not be used in the caption because it will give voters the false impression that the initiative petition would restrict only abortion rights when it will, in fact, affect other rights as well.  Petitioners Thorpe and Pappas agree, asserting that use of such "politically loaded and misleading language" is improper.

The Attorney General responds that use of the phrase "right to life" is

2

proper because it has a recognized connotation outside of its use in the proposed measure and its use will not improperly influence voters to vote for or against the measure. The Attorney General further contends that it is not appropriate to use the ballot title caption to catalog the potential consequences of enacting the measure, as opposed to identifying its subject, which he contends is the recognition of a "right to life."

ORS 250.035(2)(a) provides that a ballot title caption for a proposed constitutional amendment must begin with the words "Amends Constitution," followed by a statement of not more than 15 words that "reasonably identifies the subject matter" of the measure. The "subject matter" of a measure refers to "the 'actual major effect' of a measure or, if the measure has more than one major effect, all such effects (to the limit of the available words)." *Whitsett v. Kroger*, 348 Or 243, 247, 230 P3d 545 (2010). To identify the "actual major effect" of a measure, this court looks to "the text of the proposed measure to determine the changes that the proposed measure would enact in the context of existing law" and then evaluates whether the caption "reasonably identifies those effects." *Rasmussen v. Kroger*, 350 Or 281, 285, 253 P3d 1031 (2011).

This court has addressed the propriety of including politically charged phrases in describing the effects of a measure in a ballot title caption in a number of decisions. Each of those decisions reflects the overarching concern that a caption should not employ phrasing that could confuse or mislead voters about the actual major effect of the measure. *See Kain/Waller v. Myers*, 337 Or 36, 40, 93 P3d 62 (2004) (ballot title captions should be phrased "'in terms that will not confuse or mislead potential petition signers and voters'" (quoting *Greene v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366

3

(1995))); *Dirks v. Myers*, 329 Or 608, 615, 993 P2d 808 (2000) ("Representations in a caption about how a measure would modify existing law must not be misleading.").

For example, in *Rasmussen v. Kroger*, 350 Or 271, 273, 253 P3d 1037 (2011), the proposed measure would create a constitutional right in favor of every qualified voter who signed a petition for an initiative or referendum to have his or her signature "counted," even if the signatures were collected in violation of the laws that govern the collection of those signatures. The Attorney General's certified ballot title caption included the phrase "creates enforceable right" to have signatures count. *Id.* The court concluded that the use of the quoted phrase did not substantially comply with the requirements of ORS 250.035(2)(a) because the caption said nothing about the nature of the right. That failure, the court concluded, "impermissibly produces an incomplete picture of the new right that the measure would enact, thus conveying to voters a potentially misleading argument supporting the measure's passage." *Id.* at 278; *see also Earls v. Myers*, 330 Or 171, 176, 999 P2d 1134 (2000) ("freedom to choose" health care provider impermissible because of likelihood of prejudice); *Mabon v. Keisling*, 317 Or 406, 412-13, 856 P2d 1023 (1993) (use of "granting minority status" in measure permitting classifications on the basis of sexual orientation impermissible, because it had "no recognized meaning outside of th[e] measure" and thus "would do little to inform the voters of the measure's subject"); *Marr v. Thornton,* 237 Or 503, 392 P2d 458 (1964) ("right-to-work" phrase in caption impermissible, because it was a "slogan" that did not fairly describe the measure and was "likely to create prejudice").

In this case, the phrase "right to life" certainly is a politically charged

4

phrase, commonly associated with groups opposed to abortion rights, a matter of singular controversy in our society. But, in the context of this particular ballot measure, we conclude that its use does not violate the requirements of ORS 250.035(2)(a).

Because of the phrasing of the brief measure at issue, the caption's reference to a "right to life" is entirely accurate. A "right to life" is guaranteed by section 1 of the measure. The "person[s]" who are guaranteed the "right to life" are defined in section 2. And, under section 3, the "right to life" that is guaranteed by section 1 does not apply to those sentenced to death for aggravated murder. In any ordinary sense, the "subject" of the measure is a "right to life."

To be sure, the "right to life" that is repeatedly mentioned in the measure is nowhere defined. But in this case, unlike *Rasmussen*, the caption does not supply an incomplete or misleading picture of the right to which it refers for two reasons. First, the caption informs the voters that the right, in fact, is "undefined." Second, the caption includes, in addition to the phrase "right to life," an enumeration of the most significant effects of recognizing such a right, namely, prohibiting abortion and certain contraceptives.

Petitioners also contend that the caption is deficient in that it fails to identify *all* of the most significant effects of passage. Petitioners Carson and Fidanque argue that, to comply with the requirements of ORS 250.035(2)(a), "the caption must explain that the measure proposes to restrict end-of-life options and embryonic stem cell research." Petitioners Thorpe and Pappas similarly suggest that the mention of abortion and birth control is inadequate. They suggest that the caption should specify that the

5

measure would, in addition, prohibit "other actions denying 'life' to 'persons,' beginning at fertilization."

The Attorney General responds that, to begin with, it is not certain that the measure would have the effects that petitioners suggest. In particular, he argues, it is not certain whether adopting Initiative Petition 22 would have any effect on an individual's right to make end-of-life decisions; according to the Attorney General, merely because the measure recognizes such a right to life does not necessarily mean that the person possessing the right may not waive it. Aside from that, the Attorney General continues, this court has cautioned against using the ballot title caption simply to catalog anticipated effects rather than identify the major subject of the measure.

We agree with the Attorney General. It takes no great feat of imagination to develop a rather lengthy list of the potential effects of recognizing a "right to life" that is guaranteed to any "person" at "any stage of biological development." For example, the comments of various individuals on the proposed ballot title -- including petitioners -- mentioned such potential effects as criminalizing miscarriages, restricting availability of some fertilization treatments, and permitting the unborn to bring claims for wrongful death. Petitioners do not explain why the two matters that they have identified -- embryonic stem cell research and end-of-life decisions -- are so central to the effect of the measure that a caption will not satisfy the requirement of substantial compliance without mentioning both of them, but not others. That is especially problematic when it is at least

6

debatable whether one of those effects, pertaining to end-of-life decisions, would occur on adoption of Initiative Petition 22.[1]

Aside from that fact, petitioners' argument is predicated on a misperception of the function of a caption, which is to identify the subject of a proposed measure, not necessarily to catalog each and every potential effect. Instructive in that regard is this court's decision in *Mabon v. Myers*, 332 Or 633, 33 P3d 988 (2001). In that case, the proposed initiative consisted of a single provision stating that the state "shall keep safe from mortal harm all innocent Human Life, acknowledging and protecting the Human Person from the moment of fertilization until natural death." *Id.* at 636. The Attorney General's certified ballot title caption stated that the measure "Amends Constitution. Prohibits: abortion; physician aid-in-dying; certain pain-control, birth-control methods; other 'mortal harm.'" *Id.* (all-capitalization omitted). This court concluded that the caption failed to substantially comply with the statutory requirement to identify the subject of the measure. That subject, the court concluded was the requirement that the state "will protect some human life from fertilization until natural death." *Id.* at 638. "A caption that catalogues the effect of a proposed measure, without identifying its subject matter," the court stated, "is inadequate." *Id.* at 637; *see also Carson v. Myers*, 326 Or 248, 254, 951 P2d 700 (1998) (caption inadequate "because it catalogues an effect of the

---

[1] We note that the ballot title summary that the Attorney General certified does mention end-of-life decisions. No party contests the propriety of including that in the statement, and we do not address the matter.

7

proposed measure, rather than stating its 'subject'").

In this case, petitioners propose that the Attorney General do precisely what the court said is not necessary in *Mabon* and *Carson* -- namely, substitute a list of effects for a statement of the subject of the measure. That is not to say that a list of major effects cannot substantially comply with the requirements of ORS 250.035(2)(a). In some cases, it may be appropriate -- or, at least, in substantial compliance with the requirements of the law -- to do just that. *See, e.g.*, *Whitsett*, 348 Or at 247-49 (referring ballot title because caption failed to include all major effects of measure). We conclude that the caption at issue in this case substantially complies with the requirements of ORS 250.035(2)(a).

Petitioners next challenge the "yes" vote result statement, arguing that, as certified by the Attorney General, it "carries forward the same problems as the caption," namely, the use of the loaded phrase "right to life" and the failure to mention end-of-life decisions and certain fertility treatment options. ORS 250.035(2)(b) requires a ballot title "yes" vote result statement to consist of a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." For essentially the same reasons that we conclude that the caption substantially complies with the requirements of the statute, we conclude that the "yes" vote result statement substantially complies with relevant statutory requirements, as well.

Petitioners also challenge the "no" vote result statement, arguing that it fails to substantially comply with ORS 250.035(2)(c) because it does not inform voters of the rights that they will retain if the proposed measure does not become law. All petitioners

8

focus on the statement's reference to "constitutional rights." Petitioners Thorpe and Pappas assert that the "no" result statement phrase "retains current constitutional rights" should be altered to provide "retains current constitutional and statutory provisions," followed by a list of certain rights, such as the right to an abortion, the use of contraceptives or fertility treatment methods, and the ability to make end-of-life choices, that would be retained. They also assert that the phrase "full legal rights of a person not applicable before birth" is misleading because it focuses on the effect of the measure if passed and fails to set out what a "no" vote would preserve. Further, they question whether the "right to life" protected by the measure would, in fact, provide "full legal rights" for a person, regardless of what those rights are, as opposed to a more limited right to be free from death caused by anything but natural causes. Petitioners Carson and Fidanque agree that the word "statutory" should be added and also argue that the "no" vote result statement should mention statutory rights, particularly those involving end-of-life options, such as health care powers of attorney.

ORS 250.035(2)(c) requires that a "no" vote result statement must be "[a] simple and understandable statement of not more than 25 words that describes the result if the state measure is rejected." The statement "should state accurately what voters would retain, under their existing legal or contractual arrangements, if they defeat the measure." *Earls*, 330 Or at 177. The object is to advise "potential voters as to the choice they are being asked to make." *Whitsett*, 348 Or at 252.

We agree with petitioners that the "no" vote result statement fails to substantially comply with that standard. First, the phrase "retains current constitutional

9

rights" is so broad and ambiguous that it provides no helpful information to the voters. It is, at the least, inaccurate, because not all of the "rights" that are enumerated in the ballot title are secured by the state constitution. Indeed, some of those rights are not expressly secured either by the state constitution or by statute.

Moreover, we agree with petitioners Thorpe and Pappas that the phrase "full legal rights of a person not applicable before birth" is as ambiguous and misleading as the phrase "retains current constitutional rights." It is unclear what the Attorney General means by "full legal rights." It is apparent that the phrase is intended simply to refer to whatever rights listed in the "yes" vote results statement. As this court made clear in *Whitsett*, however, a "no" vote result statement must do more than declare that a "no" vote amounts to a rejection of the "yes" statement: "The 'no' vote result statement needs to include a description of the law that a 'no' vote would leave in place[.]" 348 Or at 251-52; *see also Nesbitt v. Myers*, 335 Or 424, 432-33, 71 P3d 530 (2003) (criticizing similar "no" vote result statement). In addition, the reference to such "full legal rights" -- whatever they may be -- not being "applicable before birth" singles out the effect of rejecting the measure on rights that may exist *before* birth, without mentioning anything about the effect of rejecting the measure on rights that may exist *after* birth.

For all the above reasons, the "no" vote result statement fails to substantially comply with ORS 250.035(2)(c) and must be referred to the Attorney General for modification. It simply does not provide an adequate explanation of the legal rights that voters will retain if they reject the measure. At the least, the statement must spell out that the result of a "no" vote would be to keep their existing rights regarding

10

abortion, the use of contraceptives, and embryonic stem cell research.

Last, we turn to the parties' arguments regarding the ballot title summary. Petitioners Thorpe and Pappas advance the same challenge to the use of the phrase "full legal rights of a person" used in the summary as they did to the same phrase used in the "no" vote result statement. They also complain that the summary fails to mention the effect of adopting the measure on certain fertility treatments. Petitioners Carson and Fidanque take issue with the statement that, "[u]nder the United States Constitution, human fertilized eggs, embryos, and fetuses do not have the full legal rights of a person." They contend that the statement is simply incorrect as a matter of federal constitutional law.

ORS 250.035(2)(d) requires that a ballot title summary contain a "concise and impartial statement * * * summarizing the state measure and its major effect." The function of the summary is "to provide voters with enough information to understand what will happen if the measure is approved, *i.e.*, to advise voters of the 'breadth' of a measure's impact." *Caruthers v. Kroger*, 347 Or 660, 670, 227 P3d 723 (2010).

In this case, we already have concluded that reference to the "full legal rights of a person" in the "no" vote result statement is too vague to substantially comply with the requirements of the law for that component of the ballot title. The use of the phrase in the summary poses the same problems, and for that reason, the summary must be referred to the Attorney General to more accurately describe the current state of the law.

As for the failure of the summary to include reference to certain fertility

11

treatments, we note that the Attorney General offers no good reason for failing to mention it in the summary. There appears to be no dispute that adoption of the measure would have the effect of prohibiting certain fertility treatments. Accordingly, we conclude that the summary should include that effect, as well.

We reject, without discussion, the remainder of petitioners' arguments.

The ballot title is referred to the Attorney General for modification.